## E. E. RISIEN V. JOHN H. BROWN.

### No. 6021.

1. **Grant of Water Privileges.**—An owner of a tract of land upon and through which a stream of water rises and flows, in selling parts of the tract fronting upon the stream may reserve exclusive water privileges, and when in selling the residue of the tract he sells the land and specially conveys the water privileges theretofore reserved, such grantee holds such privileges as against another vendee holding a part of the tract fronting upon the stream, but in whose deed the privileges were reserved.

2. **Estoppel.**—One holding exclusive right to the use of a stream is not estopped to assert such claim by reason of having assented for the use thereof by an owner upon the stream not having such right to the use of the water.

3. **Same.**—A riparian owner without water privileges, by consent of the owner of the water rights, having built a dam and having made contracts extending for several years at the instance of the said owner of the water rights, which contracts were to supply water by means of the dam so built, *held*, that the owner of the privileges was estopped from denying the right to keep and use the dam during the term of years necessary to fill such contracts as he had induced or assented to.

APPEAL from San Saba. Tried below before Hon. A. W. Moursund. The opinion gives a statement.

*Fisher & Townes*, for appellant. — 1. Where a stream with its meanders is called as the boundary of a tract of land such tract, only extends to the center or thread of the stream. Rhodes v. Whitehead, 27 Texas, 304; 3 Kent's Com., 8 ed., 521, 544.

2. Where the thread of the stream is the boundary between riparian proprietors neither owns the water. Each has an usufructuary interest therein equal to the other. Gould on Waters, sec. 204, note 5.

3. A conveyance of the right to use water does not pass any title to the water itself, nor the land over which it flows. It only creates an easement on the estate over which it passes in favor of the estate to which such use is annexed. Such conveyances are not favored in law. They must be clear and explicit, and if intended to be exclusive such intent must be definitely and clearly expressed.

4. All coproprietors in a stream being equal in right, and the use of water in small streams being incapable of division, public policy forbids that the whole stream shall thereby be lost, but for public benefits therefrom permits to any proprietor the right to cross the stream with his dam and abut same to the opposite bank, limiting this right only to the one who first exercises it, recognizing and applying the principle of equality in right but priority in time, protects such party in his use of the power otherwise running waste. To hold differently is to declare that each has an abstract right to use the power of the stream, but neither shall put it into actual use. Ware v. Walker, 12 Pac. Rep., 475; Prescot v. White, 21 Pick.; Prescott v. Williams, 5 Metc., 429; Casey v. Daniels, 8 Metc., 466.

5.   When under the circumstances set out in the preceding proposition one proprietor erects a dam across a stream and abuts same on the bank of the opposite owner, and such owner with full knowledge acquiesces therein for a long time, public policy will not permit him to interfere with the use of his bank by the party erecting the dam.

6.   When one riparian proprietor licenses the owner of the opposite bank of a stream, in which both are equally interested, to erect a dam across said stream and adjoin his bank, and such dam is erected by such licensee at his own expense, such license by virtue of its being acted upon to his injury by the licensee becomes an agreement on part of the licensor and can not be revoked.   2 Story's Eq., 70–75; Angel on Water Courses, secs. 387, 359; Rereck v. Kern, 14 Serg. & Rawls, 267; S. C., Am. Dec., 497 and note; Rucker v. Kelly, 1 Greenl., 117; S. C., Am. Dec., 38 and note; Woodbury v. Parshley, 7 N. H., 237; S. C., 26 Am. Dec., 739 and note; McKellip v. McIlhenny, 4 Watts, 317; S. C., 28 Am. Dec., 716; Wilson et al. v. Chalfant, 15 Ohio St., 248; S. C., 45 Am. Dec., 584; Swartz v. Swartz, 4 Pa. St., 353; S. C., 45 Am. Dec., 698; C. V. R. R. Co. v. McHanahan, 59 Pa. St., 31; Hazelton v. Putnam, 3 Pinney, 107; S. C., 3 Chand., 117; S. C., 54 Am. Dec., 158–165; Addison v. Hack, 2 Gill, 221; S. C., 41 Am. Dec., 421; Lang v. Buchanan, 27 Md., 516; Prince v. Case, 10 Conn., 375; S. C., 27 Am. Dec., 675 and note; Cook v. Pridgen, 45 Ga., 331; S. C., 12 Am. Rep., 582; Houston v. Lafee, 46 N. H., 508; Bridge v. Baker, 57 N. Y., 209; S. C., 15 Am. Rep., 484; Rhodes v. Otis, 33 Ala., 578; S. C., 73 Am. Dec., 439; Snowdon v. Wilas, 19 Ind., 14; S. C., 81 Am. Dec., 370; Dyer v. Sanford, 9 Met., 395; S. C., 43 Am. Dec., 399.

*Burleson & Harris,* for appellee. — 1.   In construing a deed, every part thereof should be considered with reference to the whole, so as to give effect to every part and if possible carry out the main intention of the grantor.   There is no strong presumption of law of an intent to grant land *ad filum,* where the line borders on a stream; but the actual intention as gathered from the language of the deed will control.   Pugh v. Mays, 60 Texas, 193; Hancock v. Butler, 21 Texas, 806; 2 Wait's Act. and Def., 503; 1 Id., 714, 715; Den v. Wright, Pet. C. C., 64; Smith's Lead. Cas., 174, 175; 3 Kent. Com., 575, 576.

2.   Doubtful words and provisions are to be taken most strongly against the grantor.   2 Wait's Act. and Def., 504; Hogg's Appeal, 22 Pa. St., 479; Cocheco v. Whittier, 10 N. H., 305; Watson v. Boylston, 5 Mass., 411.

3.   McAnnelly having conveyed to Brown "all the rights and privileges of using the waters of McAnelly's creek for the purpose of erecting machinery" in his deed of warranty, at which time he owned the whole stream, the subsequent reservation in the deed he made to Rogan, by

which he parted with all the remaining land bordering on said stream, inured to the benefit of Brown upon the principle that an estoppel works upon the estate and binds an after-acquired (reserved) right as between parties and privies.    Harrison v. Boring, 44 Texas, 261; Gould v. West, 32 Texas, 352, 353; 4 Kent., 98; Duchess of Kingston's Case, 2 S. L. C., 708.

4.    Where the dominant and servient estates have been united in ownership and all existing easements thereby extinguished, such easements as are classed as natural easements or those existing without the interference of man, like the flow of water, etc., will revive the moment the estate is divided, because they are incidents of property.    Johnson v. Jordan, 2 Metc. (Mass., 239; Wheatley v. Baugh, 25 Pa. St., 528; Tourlellot v. Phelps, 4 Gray; Crossley v. Lightower, Law Rep., 3 Eq., 296; Simpson v. Hoddinott, 1 C. B. (N. S.), 608; Dunklee v. Wilton R. R., 24 N. H., 497; Grant v. Chase, 17 Mass., 448; Pomfrot v. Ricroft, 1 Saund., 323, note 6; Washburn on Easements; Hill. on Real Prop., title Easements.

5.    Who ever seeks to establish an exclusive use of water in a particular way must show a rightful appropriation in some manner known and admitted by the law.    The owner of land on one side of the stream can possess the right to erect a dam across the stream and abut the same upon the opposite shore only by grant from the adjoining proprietor, or by continuing or maintaining the same adversely and uninterruptedly for such period of time as would give him such right by prescription.    And where a riparian proprietor erects a dam partly on his own land and partly on the land of another, the latter is justifiable in pulling down the part of the dam which is on his land.    Angell on Water Courses, sec. 391; Wigford v. Gill, Cro. Eliz., 269; 4 Wait's Act. and Def., 744–746; Burnham v. Kempton, 44 N. H., 78; 4 Wait's Act. and Def., 738.

6.    The doctrine of "equality in right but priority in time" applies only, even in those cases maintaining it, to one who owns both banks of a stream.    The better doctrine, however, is that priority of appropriation of the water of a stream confers no exclusive right to the use of it.    Roath v. Driscroll, 20 Conn., 532, 541; Heath v. Williams, 25 Me., 209; Mason v. Hill, 5 B. & Ad., 1; Cary v. Daniels, 8 Metc., 466; Gould v. Boston Dock Co., 13 Gray, 442; Pratt v. Lawson, 2 Allen, 275, 288; Wright v. Howard, 1 Sim. & Stu., 190; Embrey v. Owen, 6 Exch., 563; Tyler v. Wilkinson, 4 Mass. C. C., 397; Whipple v. Cumberland Manf. Co., 2 Story, 661; Hugh v. Wheeler, 2 Dev. & Bat., 50; Cowle v. Kidder, 24 N. H., 364; Davis v. Fuller, 12 Vt., 178; Sticker v. Todd, 10 Serg. & R., 63.

7.    If a proprietor of a stream grants the gratuitous permission to another to erect a dam across a stream for the latter's benefit upon the express condition that such use shall terminate at the will of the proprietor,

law and justice will not permit this beneficiary to totally disregard the terms of the benefit and hold the same permanently, adversely, and in hostility to his benefactor. Luce v. Carley, 24 Wend., 451; Baker v. Mellish, 10 Ves. Jr., 544; Phillips v. Pearce, 5 Barn & Cres., 433; Babcock v. Utter, 1 Abb. Ct. App., 27; 32 How. Pr., 439; 1 Keyes, 397; 2 Wait's Act. and Def., 656.

·8. A party will be estopped from setting up a claim to property by acquiescing in the acts of another with regard to it only when he was acquainted with his rights, knew the other was not acquainted with them, and was thereby deceived and induced to spend money on land under an erroneous opinion of title. McGarrity v. Byington, 12 Cal., 426; Morris v. Moore, 11 Hamp. (Tenn.), 433; Buckingham v. Smith, 10 Ohio St., 288; Plummer v. Mold, 22 Minn., 15; Frost v. Koon, 30 N. Y., 428; Woodward v. Wilcox, 27 Ind., 207; Edwards v. Evans, 16 Wis., 181; Mely v. Collins, 41 Cla., 663; Carroll v. Turner, 54 Ga., 177; Mayo v. Cartwright, 30 Ark., 407; Hays v. Livingstone, 34 Mich., 384; Burt v. Smith, 3 Phil. (Pa.), 363; Jamison v. Cornell, 5 N. Y., 629.

9. A verbal license may terminate without any act of revocation on the part of the licensor. Thus a verbal license to erect a dam terminates with the decay, destruction, or removal of that dam. Hepburn v. McDowell, 17 Serg. & R., 383; Carleton v. Redington, 21 N. H., 291; Cowles v. Kidder, 24 Id., 364; Allen v. Fiske, 42 Vt., 462, 464; 3 Kent's Com., 452; Ang. on Water Courses, sec. 325; Cook v. Stearns, 11 Mass., 533; Munford v. Whitney, 15 Wend., 380.

10. A power reserved in a license of revoking the same is valid, and the revocation affords no ground for a claim in damages to the licensee. Bacon's Maxims, Reg. 4; Ex Parte Miller, 2 Hill (N. Y.), 418; Wood v. Edes, 2 Allen (Mass.), 578; Freeman v. Headly, 33 N. J. Law, 523.

11. A parol license without consideration which is to be enjoyed and the acts performed upon the land of the licensor may be revoked as to any future acts or enjoyment, though the licensee may have expended labor and money on the premises. Owen v. Field, 12 Allen (Mass.), 457; Selden v. D. & H. Canal Co., 29 N. Y., 639; Houston v. Laffee, 46 N. H., 507; Foot v. N. A. & N. Co., 23 Conn., 223; Munford v. Whitney, 15 Wend., 380; Trammel v. Trammel, 11 Rich. S. C. L., 474; Hazleton v. Putman, 3 Chand. (Wis.), 117; Bridges v. Purcell, 1 Dev. & B., 492; Woodward v. Seely, 11 Ill., 157; Jamieson v. Millemann, 3 Duer (N. Y.), 255; Prince v. Case, 10 Conn., 375; Bachelder v. Wakefield, 8 Cush., 243; Harris v. Gillingham, 6 N. H., 9; Collins Co. v. Marcy, 25 Conn., 239; Ex Parte Colum, 1 Cow., 568; Foster v. Browning, 4 R. I., 47; Kimball v. Yates, 14 Ill., 464; Wallis v. Harrison, 4 Mee. & W., 538; Deslage v. Pearce, 38 Mo., 588; McCrea v. Tash, 12 Gray, 121; Cocker v. Cowper, 1 Cromp. M. & R., 418; Wood v. Leadbitter, 13 Mee. &

W., 838; Wolf v. Frost, 4 Sandf. Ch., 73; Branch v. Doune, 17 Conn., 402; King v. Wilcomb, 7 Barb., 263.

12.   A permanent right or interest in realty can not be created by a parol license.   Mumford v. Whitney, 15 Wend., 380; Rathbone v. Mc-Connell, 20 Barb., 311; Fentinam v. Smith, 4 East., 107; Cocker v. Cowper, 1 Cromp. M. & R., 418; Halems v. Cook, 11 Mass., 528, 533; Houston v. Laffee, 46 N. H., 505; Ortman v. Dixon, 13 Cal., 33; Hewlins v. Shippam, 5 Barn. & C., 221; Add. on Con., sec. 652.

13.   A parol license, unsupported by any consideration, pertaining to realty may be revoked by the licensor without compensating the licensee for any improvement made by him upon his own land or that of the licensor.   Wolf v. Frost, 4 Sandf. Ch., 73; Bacon's Maxims, Reg. 4; Ex Parte Miller, 2 Hill, 418; Houston v. Laffee, 46 N. H., 505; Woods v. Edes, 2 Allen (Mass.), 578; Freeman v. Headley, 33 N. J. L. (4 Vroom), 523; Gifford v. Brownell, 2 Allen (Mass.), 535; Wood v. Leadbitter, 13 Mee. &. W., 838; Owen v. Field, 12 Allen, 457; Selden v. D. & H. Canal Co., 29 N. Y., 639.

HOBBY, JUDGE.—This suit was brought in December, 1885, by the plaintiff Brown against Risien to determine the riparian rights of the parties to McAnelly Creek.   The plaintiff alleges that on the 1st day of January, 1877, and long prior to that time and since he was and is the owner of the land described in the petition as situated on the east bank of said creek, consisting of about 500 acres, and is the riparian proprietor of the original source of said creek and all of its water in its natural and regular flow and entitled to the exclusive possession of the same from its source to its mouth, for all reasonable and domestic purposes, and for the purpose of converting it to use by artificial means, for the purposes of using it commercially, domestically, and as a power to run machinery of all kinds by banking, damming, and all other means.   That the defendant Risien, on January 1, 1877, entered upon said premises and erected a dam extending from bank to bank, including both of the natural banks of said stream, and has converted and appropriated both banks, bed, channel, and water of said stream to his own use in various ways, as a means power, and force to run machinery and selling in specified quantities said water, and has placed in the natural bed and channel of said stream a hydraulic ram and other obstructions; all of which, it is alleged, has been done by the defendant Risien without the acquiescence and consent of the plaintiff, except by permissive accommodation up to about the 1st day of April, 1885, since which date he has committed such acts and trespasses and conversions without plaintiff's consent and against his protest.   Praying for a recovery and general relief.

Risien answered denying Brown's right as claimed by him; alleged ownership in himself of a tract of land on the west bank of the creek

when the dam was erected; asserted rights to the waters of the stream as a coproprietor with Brown; alleged the latter's acquiescence in the building of the dam with full knowledge of all the facts connected therewith, and his encouragement of him, Risien, so to do.  He also pleaded that after using the dam erected in 1877 for several years it became unfit to meet the demands made upon him to supply water, which fact was made known to Brown, who consented to an extension of the privileges previously granted and encouraged him in the erection of a new and permanent dam in the same place, and encouraged him to enter into contracts to supply parties with water, which contracts were to run for a number of years and had not expired, and that Brown had encouraged parties to enter into said contracts, and he was therefore estopped from interfering with the use and enjoyment of said dam at least until the expiration of said contracts, if not absolutely, and until he (Risien) had been compensated for the money and labor expended by him in connection therewith.

The leading questions in the case involve, first, the construction of the deed to Brown from McAnelly, which it is contended vests in him the exclusive rights to the waters of the creek as alleged in the petition; second, the law of estoppel, under the operation of which it seems the rights of the defendant Risien depend.  McAnelly was the original owner of the land on both banks of the creek from its source to its mouth.  On the 10th day of April, 1866, he executed to Brown a deed conveying 500 acres of land, which embraced all of the land on the east bank of the stream, crossing it a short distance above its mouth and including a small part of the land on the west side.  This deed in addition to the usual language employed in similar instruments contained the following clause:  "And I hereby convey unto said J. H. Brown, his heirs, and assigns all the rights and privileges of using the waters of said McAnelly Creek, which I have heretofore possessed and which until now I have reserved in all conveyances of land on said McAnelly Creek, for the purpose of erecting machinery up to R. D. McAnelly's original boundary line."

Two conveyances of land had been made by McAnelly near the source of the creek prior to the deed to Brown.  In one of these, the conveyance to Williams in 1860, this reservation is made:  "Except the extensive (probably the word 'exclusive' was intended) control of the water and the privilege of banking on said land conveyed in said creek up to starting point of said two-acre tract of land."  "The extensive control of the water," must have been a right existing in McAnelly at the time of the execution of the deed to Brown, and which he refers to as "heretofore possessed, and which until now I have reserved," etc., and together with "all the rights and privileges of using the waters of said creek," he assigned to Brown.  This would seem to be the obvious meaning of the language contained in the clause in the deed to Brown, when construed in connection with the exception or reservation in the

prior conveyance to Williams. If then McAnelly was clothed with the right to the "extensive control of the waters of the creek" which he had reserved in the deed to Williams, this right would pass to Brown, upon the principle that all the rights and privileges possessed by the grantor at the time of the conveyance would vest in his grantee unless it appears from the deed that less than these were intended to be conveyed.

It is a familiar rule in the construction of instruments of this character that effect should be given to every part thereof if this can be done. Hancock v. Butler, 21 Texas, 816.

This principle would be violated, and the clause quoted granting to Brown "all the rights and privileges of using the waters of the creek heretofore possessed and until now reserved," etc., would be inoperative and without meaning if the deed from McAnelly to Brown covers only such riparian rights to the middle or thread of the creek as would be incident to the ownership of land on the bank thereof, because such riparian rights would be the legal effect of and pass by the deed without the aid of this clause.

There are contemporaneous facts in the case supporting the construction of the deed that it operated to create an easement in Brown's favor. He purchased the land with the intention of erecting and operating a dam across the creek and to control the water below, and paid an extra consideration for this purpose.

That the language of this clause as understood and interpreted by the grantor in the deed, McAnelly, conveyed greater riparian rights and privileges than would be ordinarily incident to the ownership of land on the bank of a stream, is evidenced by the subsequent conduct of McAnelly in making the reservation in the deed to Rogan, executed in 1868, and by which instrument he conveyed all of his land remaining on the creek. This tract consisted of about 12 acres on the west bank of the stream. At the time of the execution of this conveyance to Rogan he mentioned to him the "reservations" he had made in the deed to Brown, and then inserted in the Rogan deed the following: "I hereby reserve to myself the privilege of banking water up the said creek for the purpose of erecting machinery." This could not have enured to the benefit of McAnelly, as it was the reservation of a right he could not exercise by reason of the fact that he was then divesting himself of all title to land on the creek.

The conveyance previously made to Brown of 500 acres and that to Rogan of 12 acres embraced all of the land on the creek. The most reasonable explanation of the reservation in the Rogan deed is that it was made by McAnelly to avoid any claim by Rogan which he could have made against McAnelly under the terms of his deed but for this reservation or exception. The deed from McAnelly to Brown of April, 1866, we think conveyed to the latter title to the land therein described to the

middle or thread of the creek. In addition to this the clause we have referred to, read in the light of all the facts and circumstances disclosed by the record, conveyed to Brown the right and privilege of using the waters of the creek and of controlling the same for the purpose of erecting machinery, and conveyed also to him the right to use the waters of said creek by the erection of a dam across the same, although it should become necessary in erecting such dam to use the west bank of the creek, owned by another person.

The facts which the appellant Risien claims operate as an equitable estoppel and preclude the recovery sought by Brown are that Brown authorized and permitted him to erect the dam in 1877 and to utilize the water of the creek. This permission or license was to continue for such time as suited Brown's pleasure. Under this license Risien erected a dam in 1877, which he used for several years. In 1880 Risien entered into contract with the county commissioners of San Saba County and many other persons to supply water from the creek. Brown knew that Risien had made these contracts, assisted him in obtaining some of them; was himself a subscriber to a contract to pay Risien a small sum annually to furnish water. These contracts were to remain in force for about five years. To carry out these contracts Risien erected in 1880 a new, substantial dam, obtaining from Brown material with which to construct it. After the expiration of these contracts Risien, in the spring of 1884, entered into other contracts of a similar character with numerous parties to supply water. These contracts were to continue and remain in force for several years. Brown knew that Risien had made these contracts, and induced several parties to contract with Risien, as he had previously done in 1880. The cost of the dam, including appellant's labor, is estimated at about $575, and the cost of laying the pipes and other apparatus to supply the water was about $1000. The income Risien derived from the water is estimated at about $65 per month.

The remaining question to be disposed of is, whether the acts or conduct of Brown were such as to call for the application of the doctrine of estoppel.

An equitable estoppel, or estoppel by conduct, it is said "consists in holding for truth a representation acted upon, when the party who made it seeks to deny its truth and to deprive the party who has acted upon it of the benefit obtained. The primary ground of the doctrine is that it would be a fraud to permit a party to assert what his previous conduct had denied when on the faith of that denial another or others have acted. It is not necessary that the fraud should be intended, but if it is the effect of the evidence set up it is the same in its operation." Bigelow on Estop., 476; Page v. Arnim, 29 Texas, 71. If Brown, by a course of conduct or actual expressions, so conducted himself that Risien might reasonably infer the existence of an agreement or license, whether so intended or not, the effect would be that Brown could not subsequently

gainsay the reasonable inference to be drawn from his conduct. Harrison v. Boring, 44 Texas, 269.

Brown had encouraged and assisted Risien by supplying him with material to erect the dam in 1880, and had aided the latter in obtaining contracts to supply water to the county and numerous persons. It is true that this was with reference to the contracts which expired in 1885.

But when Risein, with Brown's knowledge, had made and was entering into other contracts, in the spring of 1884, of a like character, to continue several years, the latter encouraged Risien by his conduct in inducing several parties to contract with him to believe that he could operate the dam until the contracts expired.

This conduct, entirely in harmony with Brown's previous acts, could be reasonably interpreted by Risen only as an agreement to continue the license or permission to use the dam and water for the purpose of executing these contracts made in the spring of 1884, as he (Brown) had permitted him to execute the contracts entered into in a similar manner in 1880. To allow Brown now to gainsay what his conduct then justified Risien in presuming he intended would operate as a fraud. Risien would be unquestionably liable for a breach of any of the contracts to supply water entered into in 1884 through the agency or conduct of Brown. Brown was instrumental in placing him in this position of liability, and it is this feature of his conduct which would preclude Brown from a recovery or from interfering with the use of the dam by Risien until the expiration of such contracts as were made with his assistance in 1884.

We do not think Brown is estopped by reason of the permission to Risien to erect the dam in 1877 and use the water until he desired him to discontinue its use; nor would the knowledge of and acquiesence in the building of the dam in 1880 and the supply of material to Risien for its erection affect his right to recover. Neither do we think that as a condition precedent to his recovery Brown should be required to compensate Risien for any part of the dam. The contract or license under which Risien expended his labor and means was of his own making. The dam and improvements erected by him were built with the full knowledge and recognition of the right existing in Brown to revoke the permission at any time. They were put upon Brown's land for Risien's benefit and not to improve the estate.

Brown not having revoked and not having the power to revoke the license given to Risien until the expiration of the contracts made by him and heretofore referred to, Brown has no right to recover in this action, and the judgment should be reversed and here rendered for appellant.

*Reversed and rendered.*

Adopted January 22, 1889.

Judge Acker not sitting.