## MILES v. BODENHEIM et al. (No. 1575.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 18, 1916. Rehearing Denied March 2, 1916.)

1. EASEMENTS ⬤⟰61(9) — ACTION TO ENJOIN OBSTRUCTION—EVIDENCE.

Evidence, in an action to restrain defendant from closing an alley or way used by plaintiffs in reaching their residence premises, *held* to make a case of probable right in plaintiffs to the relief sought.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 143; Dec. Dig. ⬤⟰61(9).]

2. INJUNCTION ⬤⟰152 — OBSTRUCTION OF EASEMENT—DISCRETION OF TRIAL COURT.

In such case, it should not be said that the trial court abused his discretion in granting a temporary injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 337, 343; Dec. Dig. ⬤⟰152.]

3. EVIDENCE ⬤⟰317(5)—HEARSAY.

In an action to restrain the closing an alley or way used by plaintiffs to reach their residence premises, where plaintiff had purchased from a former owner of the tract and defendant from his administratrix, testimony of the plaintiff that his grantor at the time of the sale said that there was to be an alley there, and that he wanted it always kept open, was not inadmissible as hearsay.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1178; Dec. Dig. ⬤⟰317(5).]

4. FRAUDS, STATUTE OF ⬤⟰60(1)—PAROL EVIDENCE—ESTABLISHMENT OF EASEMENT.

Such testimony was not inadmissible as seeking to establish an easement by parol testimony.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 83, 94; Dec. Dig. ⬤⟰60(1).]

5. WITNESSES ⬤⟰139(1) — COMPETENCY — TRANSACTIONS WITH DECEDENT—"PARTY."

Such evidence was not inadmissible under Vernon's Sayles' Ann. Civ. St. 1914, art. 3690, providing that in actions against executors, administrators, etc., where a judgment may be rendered for or against them as such neither party shall be allowed to testify against the others as to any transaction with the testator, etc., unless called to testify thereto by the opposite party, since the administratrix of the plaintiff's grantor, who conveyed to defendant, was not a "party" to the suit on the ground that the judgment for plaintiffs would bind her in defendant's suit on her warranty.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 582; Dec. Dig. ⬤⟰139(1).

For other definitions, see Words and Phrases, First and Second Series, Party.]

6. JUDGMENT ⬤⟰712 — CONCLUSIVENESS — PERSONS NOT PARTIES—RECORD OF FORMER SUIT.

In a suit against a warrantor on his covenant in a deed, the record of a suit between his vendee and a third party involving the title to the land conveyed, to which the warrantor was not a party and of which he was not notified and requested to defend, is not admissible as evidence that the recovery was under a paramount title, but only to show eviction and the assertion of an adverse title.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1233; Dec. Dig. ⬤⟰712.]

Appeal from District Court, Gregg County.

Action for injunction by G. A. Bodenheim and another against C. F. Miles. Temporary injunction granted, and defendant appeals. Affirmed.

---

⬤⟰For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

This is an appeal, authorized by article 4644 et seq., Vernon's Statutes, from a judgment granting a temporary injunction restraining appellant from closing an alley or way, hereinafter described, used by appellees in reaching parts of the premises on which they, with their families, respectively resided in the city of Longview. It appears from the record that in July, 1905, G. A. Rogers and his wife owned a tract of 1½ acres of land fronting west about 319 feet on Center street and north about 200 feet on College street in said city. A rough plat of the tract, showing it divided into three parts, is given below:

At the time stated, the tract of land was inclosed by fences, except for an opening about 12 feet wide at its northeast corner, indicated by the dotted line on the plat. The parts of the tract were separated by fences constructed at points indicated by the inside straight lines on the plat. Rogers and his wife had lived in a house on the part of the tract marked "Miles," and while living there so constructed the fences as to leave an open way about 12 feet wide between said part and the east line of the tract, which he used in going to and coming from College street to other parts of the tract. But, the house in which he had lived having been destroyed by fire, Rogers had constructed, and in July, 1905, was living in, a house on the part marked "Thompson," and as an outlet from same to College street was using the open way mentioned and the extension of same along the east line of the part marked "Bodenheim," indicated by the dotted line. By a deed dated July 3, 1905, Rogers and his wife conveyed the part (but not including the strip 12 feet wide east of the dotted line) marked "Bodenheim" to appellee G. A. Boden-

heim; by a deed dated June 19, 1907, they conveyed the part marked "Thompson" to W. S. Thompson, who conveyed same to J. R. Rainey, who conveyed it to appellee K. S. Melton; and by a deed dated May 2, 1908, Rogers having died, his widow, as such and as administratrix of the community estate, conveyed the remainder of the tract, being the part marked "Miles," and the open way about 12 feet wide from College street along the east line of the tract to the north line of the part marked "Thompson," to appellant, C. F. Miles. Each of the deeds mentioned contained covenants of general warranty. The deed from Rogers and wife to Bodenheim, and the one from Rogers and wife to Thompson, but not the plat attached to it, were of record at the time the one to Miles was made; but in neither of them was any mention made of the alley or way in question.

Appellee Bodenheim, as a witness for himself and Melton, testified, without objection, that he purchased the lot Rogers and wife conveyed to him as stated to build upon and use as his home; that the alley or passway was then "where it is now and had no obstruction in it," and was being used "for all purposes" by Rogers, who lived on the part of the tract marked "Thompson"; that it was "a plain roadway in there"; that after he purchased the lot he built a fence along its east line, separating the lot from the alley or way in question, providing in the fence two gates from his lot to the alley, and constructed a concrete curbing about 2 feet high along the line thereof on Center street; that he built a barn on the east end of the lot, with reference to the way to it from College street furnished by the alley, and without reference to a way to it from Center street; that he constructed on the west part of the lot, fronting Center street, a dwelling house about 75 feet wide, including a concrete walk 2 or 3 feet wide on each side of it; that he built cross-fences separating the front and rear parts of the lot, and planted and grew shrubbery and shade trees on said front part; that after improving the lot as stated he lived upon it and used the alley in question as a way for his employés, vehicles, cows, etc., to the east part thereof; and that to provide a way to that part of his lot from Center street it would be necessary for him to tear down and remove the concrete curbing along the west end of the lot and the cross-fences he had constructed, and cut down and remove some of his shrubbery and shade trees. Over appellant's objection thereto on the ground that it "was hearsay, was a conversation with a dead man and warrantor to the title, and the defendant, Miles, had no notice of the conversation," and "that it was seeking an easement by parol testimony which could only be conveyed by writing," the court permitted Bodenheim to further testify as follows:

"At the time I traded and got my deed from Mr. Rogers, I had a conversation with him with

reference to that strip of ground. He very specifically stated that it was to be an alley in the first place. That he intended to live there, and did not have any idea at the time of making a change, and that he always wanted the alley kept open. so that anybody he should sell to should always have egress to the place; and I told him that I intended to build my home predicated on that alley entrance because I built it very wide as anybody can see, and every improvement I made clearly showed that I anticipated the alley being kept open on his say-so."

Bodenheim then further testified, without objection:

"I did not understand that I was buying the alley. The understanding was that I was to have a right of way through there. Mr. Rogers said that strip was to be kept open. and there has never been any obstruction in it since that time."

And, cross-examined by appellant, he further testified:

"One thing that prompted him (Rogers) to state specifically that the alley would be kept open was that he wanted access to his own property on the south side of me, and it was not for my convenience any more than it was for his own, as it was to protect himself and his property next door to me, that he left the alley open, and said it would remain open for the convenience of whoever he might sell his place to. If he hadn't done that, however, I would not have gone ahead and built my house like I did, and I made, in fact, every improvement with the idea that the alley would remain open. I think that Mr. Rogers told me at the time that he wanted to sell that property next to me and that he wanted the alley left open so he could get to it. * * * When the deal was consummated, I had bought a lot between two lots owned by Mr. Rogers, and he retained a neck or *little strip* of land linking his two lots together at the rear of my lot, and he drove up pins and showed me where my lot came to. He retained that strip for the purpose of an alley for his use and my use also. I understand that he was reserving it for his own use and for my use also as an alley. It was my understanding that he wanted to make an alley out of it."

With reference to the use made of the alley, Bodenheim testified:

"There are about three houses behind me that use it. Mr. Gans has two residences on his property, and they use it, and Mr. Melton and I use it; that is four; and Mr. Cox, over on the east side, uses it."

Wm. S. Thompson, as a witness for appellees, testified that Rogers was living on the part of the tract marked "Thompson" at the time he (witness) purchased it. Over appellant's objection, on grounds similar to those made by him, as stated above, to testimony of appellee Bodenheim, the court permitted Thompson to further testify as follows:

"Mr. Rogers showed me the place. There was an alley leading from this place, at the time I looked at it, out to College street, or the street that runs from the High School building west. I had a conversation with Mr. Rogers with reference to that, and the understanding was that it was to remain an alley there. Mr. Rogers stated to me that the alley should be kept open. He stated that to me at the time I was trading for the property, in connection with the sale of the property to me. I knew at that time that Mr. Rogers owned the other ground there between the place I was getting and College street, along which the alley ran."

Attached to, but not mentioned in, the deed to Thompson, as it was delivered to him, was a plat as follows:

—with reference to which, without objection, he testified:

"There is a pencil sketch attached to the deed, and Rogers evidently made it, as it is in his handwriting. * * * Mr. Rogers gave me the sketch attached to the deed because I requested it of him. My purpose in requesting it was to see the exact size of the lot, and I wanted to see that an alley would be shown on the sketch, and that it would be kept open, and that was his promise. * * * I don't know that the plat is on record with the deed, but it was on then when the deed was recorded. * * * He (Rogers) gave me the sketch at the time he gave me the deed."

Thompson further testified, without objection, as follows:

"I certainly bought the property with the understanding that the alley was to be kept open and not closed. There was no understanding that there would be a gate across it, or any obstruction of any kind. There were outhouses, barns, on the back of this place when I bought it, and they were built and situated so as to be used in connection with this alley. Though the alley was the only access for a buggy. * * * The place would not have suited me at all unless it had an alley, as I kept a horse and buggy, which was necessary in my business. I guess I would have made a difference of about $200 in the value of the place if it hadn't had the alley."

Appellant testified that for two or three months, while Thompson and Bodenheim were living on the parts of the land respectively purchased by them, he lived on Center street; that his usual route from his home to town during that time carried him by the end of the alley, and that he knew it was there; that he "supposed that was an alley," and "did not see any front entrance to Bodenheim's property nor to Melton's property"; that, when he built a dwelling house on the land he purchased of Mrs. Rogers, he constructed his east fence at the place where the old fence was, "in such a way as to leave that alley open"; that he made no inquiry about the alley when he purchased; and that it was from an "inspection of the deeds" that he "ascertained that the alley," quoting, "would be mine by purchase."

Beard & Davidson, of Marshall, and Mc-Cord & Campbell, of Longview, for appellant. Young & Stinchcomb and Lacy & Bramlette, all of Longview, for appellees.

WILLSON, C. J. (after stating the facts as above). [1-6] As the cause is yet to be tried on its merits, we will not discuss the testimony, further than to say that the part of it set out in the statement made at least a case of probable right in appellees to the relief they sought. Harrison v. Boring, 44 Tex. 255; Smith v. Allen, 40 S. W. 204; Weynand v. Lutz, 29 S. W. 1097; Howell v. Estes, 71 Tex. 690, 12 S. W. 62; Mattes v. Frankel, 157 N. Y. 603, 52 N. E. 585, 68 Am. St. Rep. 804; Insurance Co. v. Patterson, 103 Ind. 582, 2 N. E. 188, 53 Am. Rep. 550; Ellis v. Bassett, 128 Ind. 118, 27 N. E. 344, 25 Am. St. Rep. 421; Irvine v. McCreary (Ky.) 56 S. W. 966, 49 L. R. A. 417; Loan Co. v. Gordon, 54 Or. 147, 102 Pac. 736, 26 L. R. A. (N. S.) 331; Phillips v. Phillips, 48 Pa. 178, 86 Am. Dec. 577; Zell v. Society, 119 Pa. 390, 13 Atl. 447, 4 Am. St. Rep. 654; Rollo v. Nelson, 34 Utah, 116, 96 Pac. 263, 26 L. R. A. (N. S.) 315; City v. Kingsbury, 101 Ind. 200, 51 Am. Rep. 749; Parsons v. Johnson, 68 N. Y. 62, 23 Am. Rep. 149; 14 Cyc. 1166 et seq.; 9 Ruling Case Law, 746 and 754, et seq. As it did, it should not be said that the judge abused the discretion he possessed when he granted the temporary injunction. Whitaker v. Hill, 179 S. W. 539. Whether the testimony, exclusive of the part thereof given by Bodenheim and Thompson, shown in the statement to have been admitted over appellant's objection, made such a case or not, need not be determined, as we are of opinion that part should not have been excluded on any of the grounds urged to it. Of those grounds we think only the one based on the contention that the testimony objected to was inhibited by article 3690, Vernon's Statutes, needs to be noticed. That article of the statutes is as follows:

"In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

The theory on which appellant argues in support of his contention is that Mrs. Rogers, who conveyed to him, was a party to the suit within the meaning of the statute, because, he asserts, a judgment in appellees' favor against him would bind her in a suit by him against her on her warranty. As we understand the law, the judgment in this suit, if against appellant, would not bind Mrs. Rogers. As said by the court in Sachse v. Loeb, 45 Tex. Civ. App. 536, 101 S. W. 450:

"It is well-settled law that, in a suit against the warrantor on his covenant in a deed, the record of a suit between him, vendee, and a third party involving the title to the land conveyed to which the warrantor was not a party, and of which he was not notified and requested to defend, is not admissible as evidence to prove, and does not establish, that the recovery therein was under a paramount title. In such case the record is only admissible to show eviction and the assertion of an adverse title."

Bennett v. Virginia Ranch, Land & Cattle Co., 1 Tex. Civ. App. 321, 21 S. W. 127, relied on by appellant, does not support his contention, and does not announce a rule contrary to the one stated above. In that case the warrantor, not merely because of interest in the result, but because named as such, was a party to the suit. For that reason the court held ·he would be concluded by the judgment rendered. In this one, Mrs. Rogers was not named as a party, and a judgment against appellant would establish nothing as against her, except the fact that appellees had asserted and established as against appellant a right to use the alley as a way to their premises. It would not operate to prevent her from showing, if she could, if sued by appellant on her warranty, that there had been no breach of the covenant.

The judgment is affirmed.