POPHAM v. EGGLESTON et al. (No. 664.)

(Court of Civil Appeals of Texas. El Paso. March 8, 1917. Rehearing Denied March 29, 1917.)

1. FRAUDS, STATUTE OF ⬤⟿60(2)—"INTEREST IN LAND" — MAINTENANCE OF IRRIGATION DAM.

An easement to maintain an irrigation dam on another's land and against his wish is an interest in land within statute of frauds (Rev. St. 1911, art. 1103), and must be created in writing.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 95.

For other definitions, see Words and Phrases, First and Second Series, Interest in Property.]

2. FRAUDS, STATUTE OF ⬤⟿129(3)—PERFORMANCE—IRREVOCABLE LICENSE.

To sustain an alleged easement to maintain an irrigation dam on another's land by possession and performance, no written grant being claimed, an irrevocable license must be shown.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 289–291.]

3. WATERS AND WATER COURSES ⬤⟿157 — MAINTENANCE OF IRRIGATION DAM—IRREVOCABLE LICENSE — SUFFICIENCY OF EVIDENCE.

Evidence showing that a ranch foreman of plaintiff's predecessor invited defendants to assist in rebuilding irrigation dam because it benefited both parties, held insufficient to establish an irrevocable license to defendants to maintain the dam, contrary to the owner's wishes, but was a mere license revocable at will.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 185.]

Appeal from District Court, Reeves County; S. J. Isaacks, Judge.

Suit by Al Popham against Charles Eggleston and others. Judgment of no cause of action, and enjoining plaintiff from interfering with use and maintenance of an irrigation dam by defendants, and plaintiff appeals. Reversed, and judgment rendered for plaintiff.

Clay Cooke, of Pecos, for appellant. J. E. Starley and Ben Palmer, both of Pecos, for appellees.

HIGGINS, J. Popham brought this suit against Chas. Eggleston and others to enjoin them from trespassing upon the west one-half of section 13, block 1, Houston & Texas Central Railway Company survey and section 24, block C–16, and from erecting a dam upon said lands across Barilla creek or draw. The lands mentioned and other tracts constitute a large cattle ranch owned by Popham. Barilla Draw rises in the Davis Mountains far to the south of the lands owned by Popham. It extends northwardly through said lands. The Popham lands were formerly owned by the Wilson-Popham Cattle Company, a corporation in which Popham was a large stockholder, and of which he was general manager. The lands passed from the corporation to Popham about May, 1912. E. P. Stuckler was the ranch boss or foreman while the lands were owned by the corporation, and has remained in that capacity since the lands passed to Popham. In the year 1900 the then owner of the ranch built a dam across the draw. This dam diverted the water from the channel of the draw, and caused it to overflow and irrigate quite a large body of land. This dam washed out and was rebuilt. It appears that the dam washed away again in 1909. It was then rebuilt by the Wilson-Popham Company, who then owned the property. The dam at this time was built about one-half mile distant from the former dam site and upon the land above described. The lands of the defendants were irrigated by the water diverted by means of the diversion dam. It seems that their lands were originally public free school land and constituted a part of the cattle range of the plaintiff and his predecessor in title, the cattle company. Beginning about the year 1908, the defendants and their predecessors in title acquired their lands from the state and fenced the same out of the pasture of Popham and the cattle company. The defendant's lands were of but little value, unless they were able to obtain water for the irrigation thereof. They had each placed a portion of their lands in cultivation, built houses thereon, and made other valuable improvements upon their lands. If they fail to secure water to irrigate their lands, it will be a very great hardship upon them. When the defendants fenced their lands out of the plaintiff's pasture, it left him a very small area that was irrigated by means of the diversion dam. This was thick with cockleburrs, and his cattle would become bogged therein. He claims that it then became unprofitable to him, that the diversion dam should be no longer maintained, and that it would be better for him if it did not exist. He therefore gave instructions to his foreman Stuckler that if

the dam washed out again not to rebuild it or permit it to be rebuilt. In the years 1914 and 1915 the defendants made application to the board of water engineers for an appropriation of the waters of Barilla creek, the applications being to take and use the water at the point where the dam was situate and by means thereof. The right to appropriate said waters was granted and permit issued. The dam washed out again in 1915, and it is to enjoin the reconstruction thereof that this suit was brought.

Upon trial, verdict was returned and judgment rendered that plaintiff take nothing, and affirmative relief was granted defendants by enjoining plaintiff from injuring, tearing down, or destroying the dam, and from interfering with the use and maintenance thereof by defendants. Under the view we take of the case, it is unnecessary to pass upon any of the assignments, except the first two, which relate to the sufficiency of the evidence to support the judgment.

[1, 2] The effect of the court's judgment was to grant to the defendants an easement in plaintiff's land and perpetual right to maintain a dam thereon for their own use and benefit. This was an interest and right in the land which must have been created by an instrument in writing. It was within the statute of frauds. Article 1103, R. S.; Parsons v. Hunt, 98 Tex. 420, 84 S. W. 644; Adams v. Weir, 99 S. W. 726; Thomas v. Irrigation Co., 80 Tex. 550, 16 S. W. 324; Risien v. Brown, 73 Tex. 135, 10 S. W. 661. It is not contended that there was a written grant of the right, but it is contended that an irrevocable license was granted by plaintiff or his predecessor in title, the cattle company, acting through Stuckler, to defendants, to maintain the dam upon said land. It is asserted that the license was given orally by Stuckler.

We may waive the question of whether or not there was such possession and performance by defendant as would remove the case from the operation of the statute of frauds. Such an inquiry is not necessary, unless there be evidence of a license irrevocable in its nature granted by Stuckler, and evidence that he had authority to grant the same.

[3] The only evidence remotely intimating that such a license was granted is found in the testimony of the defendant T. N. Wilson, who testified:

"I have helped to repair or rebuild that dam. Mr. Stuckler invited me to. The first time I worked on that dam was either 1910 or 1911. The first time Mr. Stuckler ever invited me to work on that dam it was down here in front of Henderson's drug store, sitting on the sidewalk in the fall of 1909. Stuckler said, 'Wilson, you nesters out there are all using that water and getting as much benefit of it as the ranch is, and if you nesters want to continue using this water, get your teams and scrapers and come and help rebuild that dam.' A little later they commenced work, some partially constructed, and it come an overflow and washed a great-

er part of it away. The next was in the spring, the year, I remember, of 1910 or 1911. * * * He asked me for to take my team and scraper; for us all that time to come to help, and we all came up there and brought our scrapers and things on Sunday, and Mr. Popham was there with Mr. Stuckler; they were in the buggy; that was at this dam where they had partially constructed this dam. * * * Mr. Stuckler sat there and conversed with Mr. Popham about this dam in my presence, and he [Stuckler] turned to me and said: 'Wilson, you go and tell all the nesters around here to bring their teams and scrapers and come here to-morrow and help to rebuild, build up this dam. If you don't, the next overflow will wash out what little is here; it is as much to you people as it is to us, and if you don't help to build it we are going to let it go.' Mr. Popham sat there in the buggy and heard the conversation. After we walked up on the dam and he showed us a few places, what little there was there, where to work, and so on. * * *"

He testified further concerning his conversations with Stuckler, but the foregoing quotation most strongly presents the defendant's contention. He also testified to work that he and the other defendants had done upon the dam. The testimony shows that they worked upon the dam, expending much time and money.

The testimony very clearly indicates that no irrevocable license was intended to be granted, nor does it appear that the parties so understood it. It was nothing more than a request from Stuckler that the defendants assist in repairing the dam since they were as much interested in its maintenance as his principal. It was insufficient to deprive the landowner of an estate in the land, and to vest same in defendants. It was nothing more than a license revocable at will. Railway Co. v. Johnson, 156 S. W. 253.

The case has been fully developed. There being no evidence of a grant to defendants which would vest in them such an estate in the land as would give them the right to reconstruct and maintain the dam on plaintiff's land against his wishes, the cause will be reversed, and judgment here rendered for plaintiff.

Reversed and rendered.