## ROGERS v. HUSSION et al. (No. 1229.)

(Court of Civil Appeals of Texas. Beaumont. May 16, 1925. Rehearing Denied May 27, 1925.)

1. **Frauds, statute of** ⟨⟩60(1)—**Easement is an interest in land within statute.**

An easement to use part of lot for an alleyway is an interest in land, within the statute of frauds, so that it could not be created by verbal agreement.

2. **Frauds, statute of** ⟨⟩144—**Verbal promise some months after lease held not to create easement by estoppel.**

Verbal promise by lessor, five months after execution of lease to land on which lessee was erecting building, to leave open alleyway on adjoining land if lessee would pay for paving material, *held* not to create easement by estoppel, in absence of anything said or done at time of lease.

3. **Easements** ⟨⟩21 — **Lessee claiming easement on adjoining premises owned by lessor held charged with notice of change of ownership.**

Where lessor orally granted to lessees privilege of using strip of adjoining lot for alleyway, if they would pay for paving materials, but before they acted on such promise he conveyed property by deed which was recorded, lessees were charged with notice of conveyance.

4. **Husband and wife** ⟨⟩137(2)—**Husband has no right to convey or create permanent incumbrances on wife's property.**

Although husband has management and control of wife's separate property, he has no right to convey it or create any permanent incumbrances upon it.

5. **Easements** ⟨⟩21 — **Easement by estoppel could not be imposed on wife's land by virtue of husband's promise.**

Where lessor, subsequent to lease, promised use of strip of adjoining lot for an alleyway, if lessees would pay for concrete needed, and he subsequently conveyed adjoining property to his wife, of which lessees had notice before making any expenditures, easement by estoppel could not be predicated on that promise.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit by E. J. Hussion and others against Mrs. Blanche G. Rogers. Decree for plaintiffs, and defendant appeals. Reversed and rendered.

Hunt & Teagle and E. H. Bailey, all of Houston, for appellant.
A. T. Carleton and Walter Acker, both of Houston, for appellees.

HIGHTOWER, C. J. This suit was filed by appellees E. J. Hussion and A. Y. Austin and the Standard Printing & Lithographing

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Company, as plaintiffs, against the appellant, Mrs. Blanche G. Rogers, as defendant, in one of the district courts of Harris county, with 'a view to obtaining a judgment and decree establishing an easement in their favor in and over certain land owned by appellant in the city of Houston, which appellees claimed they were entitled to use as an alleyway and driveway, and they prayed for a writ of injunction against appellant's interference with their use of her property for such purpose.

Appellant resisted the suit upon a number of grounds, but the result was a judgment and decree in favor of appellees, establishing the easement as prayed, for a period of 25 years, and from this judgment and decree Mrs. Rogers has duly prosecuted this appeal. The controversy between the parties grows out of the following facts, substantially stated:

By a written lease, dated May 1, 1919, Richard Rogers, then the living husband of appellant, and Mrs. Blanche G. Rogers leased to E. J. Hussion and A. Y. Austin, for the period of 25 years, lot No. 12 in block No. 71, S. S. B. B., in the city of Houston, fronting 50 feet on Capitol avenue, and extending back between parallel lines 125 feet, more or less. At the time this lease was executed, it was understood between the lessors and the lessees that it was the intention of Hussion and Austin to erect on the leased lot a brick building for the purpose of accommodating their printing and lithographing business, and this building was to be erected at the cost and expense of the lessees, and after expiration of the term of the lease the property, together with all improvements placed thereon, was to revert to the lessors. It was provided in the written lease that lessees should have the right to sublet the property if they saw fit to do so. On December 5, 1919, Hussion and Austin did sublet to the Standard Printing & Lithographing Company a portion of the leased lot, as well as a part of the building which they contemplated erecting thereon. The Standard Printing & Lithographing Company is a corporation, and 90 per cent. of the stock of that concern is owned by Hussion and Austin, and they will be referred to throughout this opinion as appellees.

At the time the lease from Rogers and wife to appellees was executed, appellees also held a long-term lease on another lot just west of lot No. 12, and adjoining it, and this lot also fronted about 62 feet on Capitol avenue. But they needed the lot No. 12, which they were leasing from Rogers and wife, to accommodate their growing business as printers and lithographers. About the latter part of December, 1919, or the 1st of January, 1920, appellees commenced to plan the construction of their brick building on lot 12, leased from Rogers and wife, and about the latter part of May or first part of June, 1920, the building was sufficiently completed for occupancy.

The record shows that at the time the lease from Rogers and wife to appellees was executed, Rogers also owned lot No. 1 and a part of lot No. 2, lying just east of lot No. 12, and fronting 100 feet on Capitol avenue and 90.5 feet on Caroline street. Subsequently, Rogers acquired title to the remainder of lot No. 2, and also acquired title to all of lot No. 3, which was in the same block, and which also joined lot 12 on the east side, lot No. 3 fronting 60 feet on Caroline street, and extending back between parallel lines 100 feet.

By general warranty deed, dated May 6, 1920, Richard Rogers conveyed to his wife, appellant, as her separate property, all of said lots 1, 2, 3, and 12, and the deed was filed for record on the 7th day of May, 1920. Mrs. Rogers, appellant, is admittedly the owner in her own separate right of all of said property.

As we have stated above, appellees commenced to plan the construction of their brick building on the leased lot about the latter part of December, 1916, or 1st of January, 1920, and they testified upon the trial of this case that when their first plans of the building were about completed, they went to Mr. Rogers and showed him pencil sketches of the building they were contemplating erecting on lot No. 12, believing that he would be interested in knowing the kind and character of building that would be erected by them upon the leased property, and they testified that Mr. Rogers did seem interested in the plans of their contemplated building, and upon discovering from the plans that there would be no entrance except from the front of the building, Rogers suggested to them that they ought to change the plan of the building so that they would have an entrance through the east wall for handling more conveniently their freight, etc. They further testified, in substance, that Mr. Rogers at that time stated to them that he was then contemplating the construction of a building upon lots 1 and 2, which he then owned, and that he would set his building back far enough to leave the alleyway or passway of about 5 feet in width between the two buildings, and extending back the length of the buildings, and that this would be used for the accommodation of both buildings, provided appellees would agree to put down and pay for a concrete or cement floor in this alleyway between the two buildings and a driveway out to Caroline street. Appellees further testified, in substance, that they readily accepted the suggestion of Mr. Rogers to so change the plans of their building as to leave a door or entrance in the east wall, through which their freight might be handled, and that they agreed to pay the cost and expense of putting down the concrete

in the alleyway and driveway between the two buildings, as suggested by Mr. Rogers. They further testified, in substance, that after their building was actually under construction, Mr. Rogers was frequently around the premises, and would make suggestions in connection with the construction of their building, and on numerous occasions repeated to them that the alleyway between the building he was contemplating erecting and their building would be left open for the accommodation of both buildings. Appellees further testified that about four months after they had completed the construction of their building and were occupying it, and along about September, 1920, they did, in fact, put down and pay for the concrete or cement pavement between their building and the Rogers building on the 5-foot strip or alleyway that Rogers had promised to have left open for their use, and also that they put down and paid for the concrete on the driveway leading out to Caroline street, and that the expense to them of putting down this concrete on the alleyway and driveway was about $300.

The record shows that about the 1st of March, 1921, Mr. Rogers commenced the construction of a brick building on lots 1 and 2, and that it was completed about 5 months later, and was then rented to tenants by Rogers. The record further shows that appellees, after their building was completed, and after the concrete had been laid in the alleyway and driveway, with the permission and consent of Rogers, used this alleyway and driveway as a means of ingress and egress to their building, and that they continued, with Rogers' consent and knowledge, to so use this alleyway and driveway up to the time of Rogers' death on June 25, 1922. The record further shows that about the 1st of August, 1922, Mrs. Rogers placed in charge of the Rogers building one C. G. Daugherty as her agent, and that shortly after Daugherty, as the agent of Mrs. Rogers, complained to appellees about the manner of their use of the alleyway between the two buildings, and informed them that he intended to close this alleyway, and that he finally gave them written notice that the same would be closed on August 8, 1923. Soon after this appellees filed this suit praying for relief as we have hereinbefore stated.

There is no contention by appellees that there was any provision in the written lease from Rogers and wife to them relative to an alleyway or passway or driveway such as they now seek to establish, but, on the contrary, they admit that nothing was said or contemplated between Rogers and them concerning an alleyway or driveway. The undisputed proof shows that the question of an alleyway or driveway between the two buildings was never thought of or mentioned by any of the parties until about the latter part of December, 1919, or 1st of January, 1920, when appellees approached Rogers with the plans of the building that they contemplated erecting, and they had acquired the lease on lot No. 12, as we have shown, on the 1st of May, 1919. Counsel for appellees insist, however, that while there was no mention in the written lease of the easement now claimed, and while nothing was said about it between the parties before or at the time the written lease was executed, that, nevertheless, appellant, Mrs. Rogers, on account of the verbal agreement made with them by Mr. Rogers some several months after the execution of the written lease, that the alleyway and driveway before mentioned would be left open for their use, provided they would pay for concreting the same, and that they having performed their part of the agreement by paying for this concrete work, and having changed the plans of their building as first contemplated upon the faith of the verbal promise of Mr. Rogers that they might use the alleyway and driveway, is now estopped to deny their right to the use of the alleyway and driveway.

It is the contention of appellant, among other things, that (1) the claimed verbal agreement between Mr. Rogers and appellees cannot be enforced for the reason that if made it was in violation of the statute of frauds of this state (article 3965, Revised Civil Statutes); and (2) that such verbal agreement, if ever made by Mr. Rogers, cannot be enforced on the theory of equitable estoppel as against appellant, Mrs. Rogers, for the reason that at the time the concrete work was done by appellees on the alleyway and driveway, the property over which the easement is claimed had become long before the separate property of appellant by general warranty deed, duly executed by Richard Rogers on the 6th of May, 1920, and was duly filed for record on the 7th day of May, 1920, and that appellees therefore cannot avail themselves of an equitable estoppel as against appellant by putting down the concrete on her separate property at a time when they were charged by law with notice of her title.

After careful consideration of the authorities relied upon by attorneys for both sides, we have reached the conclusion that both contentions made by appellant must be sustained, and we will dispose of them in their order as stated.

[1] According to all authorities, so far as our knowledge goes, an easement such as claimed here is an interest in land. It is defined to be:

"A liberty, privilege or advantage in land without profit, existing distinct from the ownership of the soil. It is a right which one person has to use the land of another for a specific purpose. As more fully defined it is a privilege without profit, which the owner of one tenement has the right to enjoy in respect to that

tenement, in and over the tenement of another person, by reason whereof the latter is obliged to suffer or refrain from doing something on his own tenement for the advantage of the former, a charge or burden upon one estate (the servient) for the benefit of another (the dominant)." Miller v. Babb (Tex. Com. App.) 263 S. W. 253.

[2] As we understand it, an easement may be created in four ways—by grant, by prescription, by necessity, and in some jurisdictions, including Texas, by equitable estoppel in pais. It is the latter character of easement only that appellees are claiming in this case. It is the contention of appellant that the evidence in this case was wholly insufficient to establish an easement as claimed by appellees under the rule of equitable estoppel, and we believe that this contention is correct. At the time appellees obtained the written lease from Richard Rogers and wife to lot No. 12, which contained no provision for the use by them of an alleyway or driveway over any property then owned by Rogers, there is nothing said about such alleyway or driveway. The lease was not accepted by appellees upon the promise or expectation that there would be for their use any such alleyway or driveway as they now claim. No such alleyway or driveway was in existence at the time they accepted their lease. The consideration paid by them for the lease was in no manner affected by any promise or expectation of any alleyway or driveway such as they now claim. No map or plat of any character was exhibited to them showing any such alleyway or driveway, and nothing was ever said by Rogers about such an alleyway or driveway until, as we have shown, several months after they had leased lot No. 12 and were then preparing the construction of their building. Their building occupied the whole of the lot they had leased, the east wall of the building being flush with the east line of the lot. It is true that in Texas, as we understand the authorities, an easement may be created or arise upon the principle of equitable estopple in pais, but so far as our investigation goes of the authorities, we know of no case where it has ever been held upon such facts as are presented by this record that a claimed easement such as here sought has been upheld. If we mistake not, under all the authorities in Texas, in order to create an easement upon the principle of equitable estoppel, something must be said or done at the time of the grant of the dominant estate by the owner of the servient that induces the acceptance of the grant. For instance, if at the time of the grant there should be exhibited by the grantor a map or plat showing the existence of a street or alley or other means of ingress and egress to the granted estate, and it was promised by the grantor that this street or alley or other way of ingress and egress would remain open for the use and benefit of the granted estate, and the grantee was thereby induced to accept the grant, equity would estop the grantor to deny the existence of such street or alley or other means of ingress and egress to the use of the grantee; and this has been done, as the authorities show, in a number of cases in this state. Or perhaps if a grant should be made to land without the grantor's exhibiting, at the time, to the grantee a map or plat showing the existence of a street or alley or other means of ingress and egress to the granted estate, but, in fact, there was a street or alley or other means of ingress and egress to the granted estate, and it was promised by the grantor verbally that such street or alley or other way of ingress and egress would remain open and accessible to the grantee, and this promise induced the acceptance of the grant, or affected the consideration paid therefor by the grantee, it has in some cases in this state been held that the grantee would be protected in his claim of easement in such street, alley, or other way of ingress and egress, upon the principle of equitable estoppel. These principles are recognized in the following cases, which are invoked by appellees here: Harrison v. Boring, 44 Tex. 267; Railway Co. v. Sutor, 56 Tex. 499; Wolf v. Brass, 72 Tex. 133; Risien v. Brown, 73 Tex. 135, 10 S. W. 661; Miles v. Bodenheim (Tex. Civ. App.) 184 S. W. 633; Handal v. Cobo & Dosal (Tex. Civ. App.) 225 S. W. 67.

No such facts or conditions as we have just stated were present at the time of the execution of the lease to lot No. 12, and no statement or promise of any character whatever was made by Rogers regarding any alleyway or driveway that induced the appellees to accept the lease, and the consideration for the lease, as we have stated, was in no manner affected by any such statement or promise on the part of Rogers or expectation on the part of appellees. Their whole contention must rest upon the fact that some four or five months after the execution of the lease Rogers verbally promised to leave an alleyway and driveway for their use and benefit, if they would pay for the material to be used in the alleyway and driveway, which, as the record shows, they did.

As said by the Commission of Appeals in Miller v. Babb, supra, if upon the state of facts shown by this record appellees have any remedy against appellant, it is not that which they have here sought. We do not believe that any case cited in the brief of appellees is authority for upholding the judgment in this case upon the undisputed facts as shown by this record.

[3-5] We will now dispose of appellant's second contention. As we have already stated, Richard Rogers, by general warranty deed, conveyed to appellant on May 6, 1920, lots 1, 2, 3, and 12, as her separate property, and

the deed was duly put of record the next day. At that time appellees had not expended a dollar in putting down concrete or cement upon the alley and driveway over which they now claim an easement. It was some four months later that they commenced to put down the alleyway and driveway. When they did so, the deed records of Harris county showed the title to the property on which they put the concrete to be then in appellant as her separate property. We cannot escape the conclusion that appellees were charged with the notice furnished by the deed records, and they have cited no authority contrary to these views. It is true that in Texas the husband by statute has the management and control of the wife's separate property, but he has no right to convey it or to create any permanent incumbrances upon it. It is true that at common law the husband had a freehold estate in the wife's separate real estate, but such has never been the law in Texas. Therefore, even if the verbal agreement between Rogers and appellees was made as claimed by them, and, as the judgment of the trial court implies, was a fact, nevertheless, the record showing without contradiction that the property over which the easement is claimed by appellees was the separate property of appellant at the time they expended their first dollar upon it, and this fact was made known to them by the deed records of Harris county, they could not claim an equitable estoppel as against appellant. It was not alleged in this case by appellees that appellant ever at any time made any statement or promise to appellees relative to the alleyway or driveway, or that she even knew that her husband had done so, but it is their contention that her husband must be treated as her agent, and that she must be estopped on account of his verbal promises and agreements relative to the alleyway and driveway. In this connection, the able counsel for appellees have cited a number of Texas cases, among them Cole v. Bammell, 62 Tex. 117; Hussey v. Moser, 70 Tex. 42, 7 S. W. 606; Allen v. Garrison, 92 Tex. 546, 50 S. W. 335. We have read these and all other cases cited by counsel for appellees to sustain their contention that appellant is estopped by reason of the verbal agreement between her husband and appellees, but we have reached the conclusion that they do not sustain that contention.

In Cole v. Bammell, a married woman made a deed to land, which was her separate property, for the recited consideration of $1,500, and delivered the deed to her husband for delivery to the purchaser. As a matter of fact, the husband had agreed with the purchaser that he might have the land for $600, and he delivered the deed to the purchaser and received only $600 as consideration for the land. After more than seven years, Mrs. Bammell filed suit to recover the land because of the fraud practiced upon her by her husband, and our Supreme Court, through Chief Justice Willie, held that she could do so, but that because of her long delay and acquiescence in the fraud the defendant was entitled to recover for the value of improvements made by him in good faith.

In Hussey v. Moser, Mrs. Hussey was induced by fraud of her husband to consent to the execution of an instrument which she thought was a lease, but which was, in fact, a deed conveying the community homestead. Soon thereafter she found out her mistake, and the deception of her husband, but she took no steps for more than ten years to protect herself, and in the meantime the property had gotten into hands of an innocent purchaser, who paid value therefor. On such facts, our Supreme Court, through Judge Gaines, held that the wife was estopped to recover the land, because of her long delay in taking action against the fraud of her husband.

In Allen v. Garrison, it was held by our Supreme Court, through Judge Gaines, that a wife could not take advantage of the fraud of her husband, who acted as her agent in the purchase of land at a sale under a deed of trust. The court simply gave application to the general rule that the principal is bound by the acts of the agent done within the scope of the agency.

Other cases cited by appellees are no more in point on the question of estoppel than are those just mentioned. In this case it is not claimed by appellees that there was any fraud on the part of Mr. Rogers, of which the wife had any knowledge, or that there was any fraud at all on his part, nor do they even allege, nor does the evidence show, that Mrs. Rogers knew that Mr. Rogers had made any verbal agreement with appellees relative to an alley or driveway. There is not a thing in the pleadings or the evidence in this case to raise an issue of estoppel against appellant, Mrs. Rogers.

It would serve no useful purpose to carry this opinion to greater length. It is the opinion of this court that the judgment in this case, upon the undisputed facts, must be reversed and rendered, and it has been accordingly so ordered.