ROLLO et al. v. NELSON et al.

No. 1890. Decided June 1, 1908 (96 Pac. 263).

1. EASEMENTS—KNOWLEDGE OF EXISTENCE—MEANS OF KNOWLEDGE.
Where a cement walk, constructed in front of six lots facing on a cul-de-sac, was visible and plain to be seen by any one entering the court, and it was evident, that it was intended by the person who constructed it, and who owned all the lots, that it was to be used as an easement in connection with the use and occupation of the lots in front of which it was constructed, a purchaser of the lot nearest the street, on which the court opened, who visited it before purchasing the lot, and who went up through the court, was charged with notice of the existence of the walk, and the purpose for which it was being used; as means of knowledge in such case was equivalent to knowledge.

2. SAME—EASEMENTS APPURTENANT. On a severance of an estate by a sale of a part thereof, all easements of a permanent character, that have been created in favor of land sold, and which are open and plain to be seen, and are reasonably necessary for its use and convenient enjoyment, unless expressly reserved by the grantees, pass as appurtenances to the land.

3. SAME. Servitudes created by the owner of land, which are plainly visible or notorious, and from the character of which it may fairly be presumed that he intended their preservation, as necessary to the convenient enjoyment of his property, become, when the lands are divided and pass into other hands, permanent appurtenances thereto, and the owner of neither the dominant nor servient portions of the land has power adversely to interfere with their proper use and enjoyment.[1]

4. SAME. Where the owner of certain land abutting on a court, laid out lots on each side of the court, and constructed a cement walk in front of the lots on one side, which was obviously for the use of the occupants of such lots, such walk, on sale of the lots to others, passed as an easement appurtenant to the lots purchased, so that the purchaser of the lot nearest the public street could not obstruct the walk by erecting a fence across it.

5. SAME—CONVEYANCES AFFECTING EASEMENTS. By agreement for the sale of certain lots abutting on a cul-de-sac, the vendor covenanted to deed the lots therein mentioned, with all improvements and appurtenances thereto belonging or appurtenant, together with a perpetual right of way over a twenty-foot tract of land described. *Held*, that the agreement contained two separate and distinct covenants, one for the conveyance of the lots with all the improvements and appurtenances thereon, and the other for a grant of a perpetual right of way twenty feet in width, neither of which covenants limited nor restricted the other in any sense, so that the express covenant as to the twenty foot right of way did not show that the grantor intended to reserve to himself all other appurtenances of like character, thereby excepting from the agreement an easement in a cement walk, which was constructed across the front end of the lots and connecting them with the public street, but which was not within the twenty-foot right of way.

Appeal from District Court, Third District; C. W. Morse, Judge.

---

[1] Fayter v. North, 30 Utah 156, 83 Pac. 742, 6 L. R. A. (N. S.) 410.

Action by John S. Rollo and others against David A. Nelson and another, to enjoin defendants from obstructing a cement walk. From a judgment for defendants, plaintiffs appeal.

REVERSED AND REMANDED.

*Thurman, Wedgwood & Irvine* and *J. H. Hurd* for appellants.

*H. P. Henderson* and *A. J. Weber* for respondents.

### APPELLANT'S POINTS.

"A private right of way is an easement and an interest in land within the statute of frauds; but a parol contract will convey it where immediate possession is taken under it and it is continuously used thereafter constituting a part performance." (*Robinson v. Thrailkill,* 10 N. E. 647.)

"It is not essential that a grantee should have actual knowledge of the burden (of the easement), for it is a familiar doctrine that one who has means of knowledge is presumed to have knowledge. This doctrine is often applied to easements, and the owner of the dominant estate, in a visible and open way across the land of another cannot be deprived of his rights although the servient estate may have been purchased by one who has no actual knowledge of the easement." (*Shirk v. Board of Comrs.,* 5 N. E. 705; *Seymour v. Lewis,* 78 Am. Dec. 108; *Ellis v. Bassett,* 25 Am. St. Rep. 421; *Phillips v. Phillips,* 86 Am. Dec. 577.)

"When the owner of land conveys a part of it, the grantee takes the part conveyed subject to easements in favor of the grantor which are apparent at the time of the conveyance." (*Jaynes v. Jenkins,* 6 Am. Rep. 300; *Cent. Rd. Co. v. Valentine,* 29 N. J. L. 561, cited in 17 Cent. Dig., col. 1809; *Overdeer's Admr. v. Updegraff,* 69 Pa. St. 110; *Randall v. Silverthorn,* 4 Pa. St. 173; *Wissler v. Herschey,* 23 Pa. St. 333; *Hanil v. Griffith,* 49 How. Pr. 305; *Butterworth v. Crawford,* 46 N. Y. 349.)

The record in this case discloses about the following state of facts: One William Ehlert, long prior to February, 1905, was the owner of a tract of land in lot 3, block B, Salt Lake City survey. This piece of ground lies between Fifth and Sixth South streets, faces and abuts on Third East street, and extends east to the center of the block. Through the center of this parcel of land Ehlert laid out an avenue, known as "Fairmont Avenue." This avenue opens on Third East street and runs east to the center of the block, where it terminates. It is a blind alley, being open at one end only. Ehlert also laid out six lots on the north and six on the south side of the avenue. In February, 1905, and prior thereto, each of the plaintiffs entered into negotiations with Ehlert for the purchase of a house and lot on the north side of the avenue. In the case of plaintiff Rollo the negotiations were carried on through a real estate agent, who had the lot listed and advertised for sale. In each case a sale was agreed upon, and contracts containing the terms and conditions of the sales were drawn up, and signed by Ehlert and the respective plaintiffs. These contracts were duly recorded. At the time the contracts were entered into there was in existence on the north side of Fairmont avenue, and running parallel therewith, a cement sidewalk three feet in width. This sidewalk was contiguous to said avenue, and was immediately in front of and connected with the residences purchased or agreed to be purchased by the plaintiffs. The sidewalk was used by plaintiffs, their families, and all other persons who had occasion to enter or leave the avenue on foot, and to all appearances was a part thereof, and was advertised by Ehlert as an inducement to plaintiffs and other people to purchase lots bordering thereon. Ehlert charged $100 more per lot for the land on the north side than he did for the same amount of ground on the south side of the avenue, where there was no cement sidewalk. The difference in price, as explained by Ehlert in his testimony, was due to the fact that the lots on the north side had "south fronts," and were connected with

the public street (Third East street) by the cement sidewalk in question. The lot purchased, or agreed to be purchased, by the plaintiff Rollo, is the third lot east from the public street with which the avenue is connected. The house on this lot was constructed and the cement sidewalk laid from the public street to the east boundary line of the lot, about two years before the property was purchased by Rollo. About six months after Ehlert constructed the house which he sold to Rollo, he erected another, on the lot which adjoins the Rollo property on the east, and extended the cement sidewalk to the east line of that lot. Later on he extended the cement sidewalk to the east end of the avenue. In each agreement the lot therein described extended to the south side of the cement sidewalk; that is, a portion of the cement sidewalk was included within each lot purchased by the plaintiffs. At the time these contracts were entered into Ehlert was, and for two years prior thereto had been, occupying the premises purchased by Rollo, as a home for himself and family, and they, together with his (Ehlert's) tenants, who occupied one of the houses to the east and adjoining the property he contracted to sell to Rollo, used this cement sidewalk in going from and in returning to their respective homes. During the time Ehlert was occupying these premises, he commenced the erection of a building on the lot farthest west, and on the north side of the avenue. This building, which faces west on Third East street, with its south wall running parallel with the cement walk in question, was in course of construction when plaintiff Rollo took possession of the property purchased by him under his contract with Ehlert, and building material to be used in said house was placed upon and obstructed the cement walk. After the building was completed, and after plaintiffs had been in possession of their respective pieces of property, and had occupied the same as their homes for several months, Ehlert sold this west lot to defendant D. A. Nelson, who purchased the property as agent for his mother, Mary P. Nelson, who is also made defendant in the action. Before he purchased the property, Nelson made an examination of the premises, and had notice of the existence

of the cement walk, and the use that was being made of it.

The evidence for plaintiffs tends to show that, at the time they were negotiating for the purchase of the respective pieces of property mentioned in the contracts referred to, Ehlert represented to them that the cement walk was appurtenant to the lots on the north side of the avenue, and was intended for their (plaintiff's) use and benefit, and for the use of all other persons who might have occasion to enter or depart from said avenue on foot. Ehlert, who was called as a witness, attempted to deny this evidence, yet we think it may be fairly said that his testimony, when considered in its entirety, corroborates, rather than disputes, plaintiff's evidence on this point. In his direct examination he said in part: "At the time I sold to Rollo I had the sidewalk and about half of the street covered with building material [referring to the building material hereinbefore mentioned]. I made apologies to Rollo for this, and told him that after I had the house done, these things would look different." On cross-examination he stated: "I volunteered to Mr. Rollo that I intended to repair this walk down in front of defendant's lot. . . . I said to him I would put in a new walk there. . . . I told him I was not only going to accommodate him with such walk as I had there, but was going to make a better one. . . . I was going to the further expense of putting in an additional three feet of cement walk clear through that alley. . . . I thought I owed them some kind of a cement walk in there, and if they could not have it where they got it located, I was going to have it outside for them. I felt under obligations to do that from what I had held out to those people—that they should have a cement walk running clear through from Third East street." Ehlert also testified that plaintiffs Decker and Nelson requested him to extend the cement sidewalk so as to connect it with the lots purchased by them, and that he did so.

The record also shows that after plaintiffs had been in possession and occupation of the lots purchased by them and while this cement sidewalk was in common, general, and notorious use by plaintiffs, and all persons who had occasion to

enter or leave Fairmont avenue, the defendants commenced to erect a fence on the south side of the walk, from Third East street along the line of said walk to the east line of the premises purchased by them from Ehlert, plaintiff's grantor, and thence across said sidewalk, with intent to thereby close the same to public travel, and prevent the use thereof by plaintiffs, and all other persons who might have occasion to enter and be upon said avenue, and to compel plaintiffs and such other persons to use the roadway of said Fairmont avenue for foot travel. Thereupon plaintiffs commenced this action, and obtained a temporary injunction against defendants, prohibiting them from closing said sidewalk. Upon the trial of said cause the facts, as developed by the evidence, were substantially as herein stated. The court, among other things, found: "That at the time of said agreement this walk was in use, in connection with the said premises mentioned in the agreements of plaintiffs Rollo and Decker, and at the time of said deed to defendants, . . . . but in the contract for purchase by plaintiff Nelson it was agreed orally that this walk should be built, and should be included in the land covered by said purchase, and was built accordingly, and used in connection with said premises, and said walk was not used by the public, nor any other person, except the said plaintiffs, in going to or coming from the said premises." The court further found that: "Neither one of the defendants Nelson, at the time of the said sale to them by Ehlert, knew of any oral or written agreement, or of any understanding between said Ehlert and the said plaintiffs, as to any right of way, to put them on notice, except as shown by the contents of said deeds from Ehlert to said plaintiffs." The court, however, as a conclusion of law, found: "That the parties in the said agreements of sale, by mentioning and granting the twenty-foot right of way, but in no way mentioning the granting or reserving the other three-foot cement walk, intended that the said twenty-foot right of way should pass and be appurtenant to the land to be sold, and was described as intended, and also indicated that said three-foot walk should

not pass or be appurtenant thereto." Judgment was duly entered in favor of defendants, dissolving the temporary injunction and dismissing plaintiffs' complaint. To reverse the judgment, plaintiffs have appealed to this court.

McCARTY, C. J. (after stating the facts as above).

The evidence clearly shows and the trial court, in effect, found, that the cement sidewalk was intended by Ehlert as an easement, to be used in connection with the use and occupation of the lots purchased by appellants. And we think it may be fairly said, from the evidence introduced in behalf of defendants, that the walk was reasonably necessary to the use and convenient enjoyment of the property purchased by the plaintiffs. It appears, however, that the court decided against appellants, and dismissed their complaint upon the following grounds: (1) That neither of the respondents, at the time they purchased their ground from Ehlert, had notice of the easement claimed by appellants; and (2) that the easement did not pass as an appurtenant to the lots purchased by appellants. The record conclusively shows that the cement walk was visible and plain to be seen by any one entering the avenue. And the purpose for which it was intended, and for which it was being used both before and at the time respondents purchased their lots from Ehlert, is too plain to admit of serious discussion. In fact the court found "that said walk, after the same was fully constructed, was visible and continuous, except for twelve feet at the east end of the defendants' land." And, furtherfore, respondent D. A. Nelson, as hereinbefore stated visited, the avenue and examined the property which he afterwards purchased for his mother, Mary P. Nelson. True, he testified that he did not remember of seeing the cement walk at all, but he admitted that he "went up through the court" (referring to the avenue) and "probably saw the cement walk," and that "it must have been there." The walk being obvious and permanent, he and his mother are deemed to have had notice of its existence, and the purpose for which it was being used; for it is settled law that in cases of this kind means

of knowledge is equivalent to knowledge. (*Shirk v. Board of Com'rs,* 106 Ind. 573, 5 N. E. 705; *Robinson v. Thrail-kill,* 110 Ind. 117, 10 N. E. 647; *Agne v. Seitsinger,* 85 Iowa 305, 52 N. W. 228; 2 Jones, Real Prop. & Conv., secs. 1564, 1569; Wade on Notice, sec. 300; 21 A. & E. Ency. Law [2d Ed.], 584; *Mamel v. Griffith,* 49 How. Pr. [N. Y.] 305.)

The most important question, however, in this case is, did the easement in and to the cement walk pass as an appurtenance to the lots purchased by appellants? This question must be answered in the affirmative; for it is a well-recognized rule of law that, on a severance of an estate by a sale of a part thereof, all easements of a permanent character, that have been created in favor of the land sold, and which are open and plain to be seen, and are reasonably necessary for its use and convenient enjoyment, unless expressly reserved by the grantees, pass as appurtenances to the land. (2 Jones, Real Prop. & Conv. 1640; 14 Cyc. 1184, 1185; 10 A. & E. Ency. Law, 419; Washburn, Easements & Serv., 9.) This doctrine is tersely, and, as we think, correctly stated in the case of *Phillips v. Phillips,* 48 Pa. 178, 86 Am. Dec. 577. In the syllabus of the opinion it is said:

"Servitudes, adopted by the owner of land, which are plainly visible or notorious, and from the character of which it may fairly be presumed that he intended their preservation as necessary to the convenient enjoyment of his property, become, when the lands are divided and pass into other hands, permanent appurtenances thereto, and the owner of neither the dominant nor servient portions of the land has power adversely to interfere with their proper use and enjoyment."

Likewise, in 14 Cyc. 1190, under the headnotes, "Severance and Partition," it is said:

"An easement is not extinguished by a division of the estate to which it is appurtenant, but the owner or assignee of any portion of that estate may claim the right, so far as it is applicable to his part of the property, provided the right can be enjoyed, as to the respective parcels, without any additional burden upon the servient estate; accordingly a right of way, which is appurtenant to an

estate, is appurtenant to every part of it, no matter into how many parts it may be subdivided, and it inures to the benefit of the owners of all subdivisions so situated that it can be used."

This rule was recognized by this court in the case of *Fayter v. North,* 30 Utah 156, 83 Pac. 742, 6 L. R. A. (N. S.) 410. While Mr. Justice Straup dissented from the result arrived at in the case by the majority of the court, he nevertheless approved of the general doctrine herein announced. In the course of his dissenting opinion he says, when a

"Permanent and obvious servitude is imposed on one part of an estate in favor of another, which, at the time of the serverance, is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership, by voluntary alienation, there arises, by implication of law, a grant of the right to continue such use. In such case the law implies that with the grant of the one an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage, in substantially the same condition in which it appeared and was used when the grant was made."

The following are a few of the many cases which support this doctrine: *Currier v. Howes,* 103 Cal. 431, 37 Pac. 521; *Seymour v. Lewis,* 13 N. J. Eq. 439, 78 Am. Dec. 108; *Ellis v. Bassett,* 128 Ind. 118, 27 N. E. 344, 25 Am. St. Rep. 421; *Janes v. Jenkins,* 31 Md. 1, 6 Am. Rep. 300; *Butterworth v. Crawford,* 46 N. Y. 349, 7 Am. Rep. 352; *Lampman v. Milks,* 21 N. Y. 505; *Randall v. Silverthorn,* 4 Pa. 173; *Overdeer v. Updegraff,* 69 Pa. 110; *Newell v. Sass,* 142 Ill. 104, 31 N. E. 176.

Counsel for respondents have not filed a brief, neither did they argue the case orally in this court, therefore we are deprived of the benefit of their views respecting the merits of the case and the questions of law involved. We think, however, it is evident, from the findings of fact and the conclusions of law made by the court, and the judgment entered thereon that the trial court proceeded on the theory that, as the twenty-foot right of way was mentioned and described in

the agreements referred to, and no direct or special reference made therein to the cement walk, only the twenty-foot right of way passed as an appurtenant to the lots purchased by appellants.

Ehlert, by entering into the agreements mentioned, covenanted to deed the lots therein mentioned "with all and singular improvements, buildings and appurtenances thereto belonging or in any wise appertaining . . . together with a perpetual right of way over the following tract of land." Then follows a description of the right of way, twenty feet in width, commencing at Third East street, and running the entire length of the avenue. It will thus be observed that there are two separate and distinct covenants contained in the agreements, one of which is to convey the lots with all the improvements and the appurtenances thereunto belonging, and the other is to grant a perpetual right of way twenty feet in width through the avenue. Neither covenant in any sense limits or restricts the other. While it may be said that, under the facts and circumstances of this case, an easement in the twenty-foot right of way, even if it had not been specially mentioned in the agreements, would have passed as an appurtenant to the lots, yet it does not follow, as a legal proposition, that because Ehlert specifically expressed it in the contract, he thereby intended to and did reserve to himself all other appurtenances of like character.

The judgment is reversed, and the cause remanded, with directions to the trial court to set aside the findings and conclusions herein, and to make findings and conclusions in favor of plaintiffs, in accordance with the views herein expressed, and enter judgment thereon as prayed for in plaintiffs' complaint; plaintiffs to recover their costs.

STRAUP and FRICK, JJ., concur.