Frederick R. HOMER;  Robert Steur and Debra D. Steur;  and Robert Steur, Inc., a Utah corporation, Plaintiffs and Appellees,

v.

Reed M. SMITH;  Barbara D. Smith;  and Sandy Hills, Inc., a Utah corporation, Defendants and Appellants.

No. 920722–CA.

Court of Appeals of Utah.

Dec. 29, 1993.

Clark W. Sessions and Cynthia K.C. Meyer, Salt Lake City, for defendants and appellants.

Harold C. Verhaaren, Michael W. Homer, H. Michael Drake, and Paul M. Simmons, Salt Lake City, for plaintiffs and appellees.

Before BILLINGS, DAVIS and GREENWOOD, JJ.

## OPINION [1]

DAVIS, Judge:

Appellants Reed M. Smith, Barbara D. Smith (the "Smiths") and Sandy Hills, Inc. ("Sandy Hills") appeal from a judgment entered against them and in favor of appellees Frederick R. Homer ("Homer"), and Robert Steur and Debra D. Steur (the "Steurs"). This case involves two separate lawsuits brought against the Smiths and Sandy Hills by Homer and the Steurs. The two cases were consolidated before trial because they are both property disputes concerning the same tract of land. We affirm.

## I. FACTS

The Smiths were the original commercial developers of property located on the southwest corner of 1300 South and 2100 East streets in Salt Lake City, Utah. In the late 1940s, they constructed a grocery store on property near the corner. In 1970 the Smiths transferred their property to Sandy Hills, the present owner.[2]

In 1947, the Smiths sold a parcel of land south of the grocery store to Thomas and Loraine Dewey (the "Deweys"), who were Homer's predecessors-in-interest. The Deweys were Mrs. Smith's parents. In the early 1950s, the Deweys constructed a commercial building on their property that included a drug store on the ground level and apartments on the upper level. The second floor apartments were constructed piecemeal, beginning in approximately 1954 and continuing until approximately 1964. The apartments encroach over the roof of Sandy Hills's single story building. The width of the encroachment varies from two-tenths of a foot to seven-tenths of a foot.

Also in the early 1950s, the Smiths and the Deweys acquired separately the lots directly behind (to the west) of their property for parking. Customer parking was also available in front of the two buildings. Originally, patrons pulled directly from 2100 East into parking areas in front of the buildings. However, in approximately 1953, Salt Lake City improved 2100 East and added a curb in front of the buildings. Thereafter, vehicles parking in front had to enter and exit the parking area by way of two curb cuts; one in front of the Steurs' property, and one in front of the Smiths' property.

Parking in the rear of the buildings was accessed either from 1300 South behind the buildings, or from 2100 East through an alley south of the Deweys' property. Thus, vehicles could enter from 1300 South and exit onto 2100 East, and vice versa. The alley connecting 2100 East to the rear of the properties and the building immediately south of the alley were originally owned by Vera Callister, the Steurs' predecessor-in-interest.

In November of 1953, Mr. Smith, Mr. Dewey and Mrs. Callister entered into an agreement to formalize their rights of access and parking on their respective properties. Mr. Smith and Mr. Dewey agreed to give Mrs. Callister a right-of-way over fifty feet of their property behind the buildings, and to provide and maintain parking spaces on their property. In return, Mrs. Callister agreed to provide and maintain a twenty-six foot wide right-of-way through the alley leading

---

1. This opinion shall replace the opinion which was filed herein on December 22, 1993 and was mailed to the parties on the same date.

2. Sandy Hills is a closely-held corporation. Reed and Barbara Smith are its officers, and their seven children serve as directors.

from 2100 East. The parties exchanged deeds of right-of-way in 1954 pursuant to the agreement.

In 1964, the Deweys began leasing their drug store to Bonneville Drug, a company owned by plaintiff Homer. In approximately 1976, Bonneville Drug purchased the entire building from the Deweys, including the parking area in front of the building. Bonneville Drug subsequently transferred the property to Homer, who owns it today.

In 1983, the Steurs purchased the Callister property, which was subject to the right-of-way deeds.[3] At that time, the alley was in poor repair, with several holes in the asphalt. A three-foot wide sidewalk existed on the south side of the right-of-way. In March 1986, Mr. Smith, on behalf of Sandy Hills, sent the Steurs a letter complaining that the right-of-way agreement had been violated because, among other things, the twenty-six foot right-of-way was being partially blocked by parked vehicles. The Steurs consulted an architect for advice on how to prohibit parking in the right-of-way. Next, they advised Mr. Smith by letter that they intended to make improvements to alleviate the problem.

In May and June 1986, the Steurs improved the right-of-way by resurfacing it and replacing the old three-foot wide sidewalk with a new five-foot wide sidewalk. The new sidewalk was raised five inches from the asphalt surface.[4] The Steurs added a one-foot wide curb on the north side of the right-of-way and painted directional arrows on either lane and two solid yellow lines down the center.

Shortly thereafter, Mr. Smith complained to the Steurs that the improvements narrowed the right-of-way and impeded use of the alley by semi-trucks. Mr. Smith proposed that the parties terminate the reciprocal rights-of-way, but the Steurs would not agree to do so.

The dispute seemingly died down until nearly two and one-half years later, when Sandy Hills, without notice to either Homer or the Steurs, placed concrete barriers topped with a chain link fence across the entire fifty-foot right-of-way behind its building. Sandy Hills also placed a concrete barrier in front of its building, thereby impeding in part the traditional access to the Homer property.[5] The rear barrier completely prevented the Steurs and Homer, or any of their customers, employees or tenants, from accessing either 1300 South through the fifty-foot right-of-way, or the parking behind the Homer building from 1300 South.

Homer then filed suit against Sandy Hills seeking damages and an order that the barriers be removed permanently. Sandy Hills counterclaimed, alleging that Homer's second floor apartments encroached over Sandy Hills's property. The Steurs filed a separate lawsuit against Sandy Hills in which they sought to enforce the right-of-way agreement and to permanently enjoin Sandy Hills from interfering with their right to enjoy the right-of-way.

The trial court held a bench trial on the matter and determined that: (1) Homer was entitled to a prescriptive easement across the front and rear of Sandy Hills's property; (2) Sandy Hills was not entitled to judgment on its counterclaim because the encroaching apartments created a boundary by acquiescence; and (3) the Steurs' improvements to the twenty-six foot right-of-way did not violate the deeds of right-of-way or the 1953 agreement. The trial court ordered the rear barricade removed and permanently enjoined Sandy Hills from erecting additional barriers across either the front or back of its property.[6]

Sandy Hills raises several claims of error on appeal. For ease of analysis, we will

---

3. The Steurs opened a beauty salon, dress store and skin care salon on the Callister property.

4. The old three-foot sidewalk was flush with the asphalt on one end and raised approximately two inches at the other end.

5. Because the parking areas in front of the buildings could only be accessed at the curb cuts in front of either the Steurs' or Sandy Hills's building, the barrier made it difficult, if not impossible at times, to park and maneuver there.

6. The barricade in front of the Sandy Hills building was removed by stipulation of the parties prior to trial.

address separately its assertions as they relate to Homer and the Steurs.

## II. DISPUTE WITH HOMER

Sandy Hills claims the trial court erred in awarding Homer a prescriptive easement across the front and rear of Sandy Hills's property because there was no evidence that: (1) Homer or his predecessors-in-interest, as opposed to others, actually used the property in question; or (2) Homer's use was adverse. Sandy Hills also objects to the trial court's ruling permitting Homer to tack his use onto that of his predecessor in order to establish the twenty-year prescriptive period. Finally, Sandy Hills asserts that the trial court incorrectly determined that even though Homer's apartments encroached onto Sandy Hills's property, the encroachment could remain under the doctrine of boundary by acquiescence.

### A. Prescriptive Easement

■ The requirements for establishing a prescriptive easement are open, notorious, adverse and continuous use of property for a period of twenty years. *Crane v. Crane,* 683 P.2d 1062, 1064 (Utah 1984); *Jensen v. Brown,* 639 P.2d 150, 152 (Utah 1981).

■ Sandy Hills first challenges the trial court's finding that Homer and his predecessors-in-interest actually used the front and rear parking areas to reach the Homer building. We will not set aside a trial court's findings of fact unless they are clearly erroneous. Utah R.Civ.P. 52(a); *Englert v. Zane,* 848 P.2d 165, 168 (Utah App.1993). "'A finding is clearly erroneous if it is against the great weight of evidence or if the court is otherwise definitely and firmly convinced that a mistake has been made.'" *Englert,* 848 P.2d at 168 (quoting *Bountiful v. Riley,* 784 P.2d 1174, 1175 (Utah 1989)).

■ The record reveals that the Deweys, Homer's predecessors-in-interest, did travel regularly over Sandy Hills's property. Although the record does not include any direct evidence that Homer himself actually passed over Sandy Hills's property in order to reach his building, Homer testified that he worked daily in his building as a pharmacist for over twenty years. When acting as the fact-finder, the trial court is entitled to assess the witnesses and to weigh the evidence and draw reasonable inferences therefrom. *Jensen,* 639 P.2d at 152; *see State v. Garrett,* 849 P.2d 578, 582 (Utah App.), *cert. denied,* 860 P.2d 943 (Utah 1993). Here, the court implicitly determined that Homer passed over the front and rear of Sandy Hills's property during his tenure with Bonneville Drug. Moreover, Homer and others testified that Homer's customers and tenants regularly passed over Sandy Hills's property. Sandy Hills, however, claims that only Homer's use (or alleged lack thereof) can be considered and not use by others such as customers or tenants.

■ While it is true that public use in general is not enough for prescriptive easement purposes, use by those associated with the dominant estate is acceptable. *Crane,* 683 P.2d at 1066 (use of easement by plaintiffs' agents was sufficient); *Andrzejczyk v. Advo Sys., Inc.,* 146 Conn. 428, 151 A.2d 881, 884 (1959) (use by delivery persons and tenants must be considered in establishing easement by prescription); *Rosenblatt v. Kizell,* 105 N.H. 59, 192 A.2d 613, 614 (1963) (parties claiming right-of-way could rely on use by their tenants and customers); *cf. Butler v. Lee,* 774 P.2d 1150, 1153 (Utah App.1989) (easement by implication can be based on continuous use by claimant's patrons). Use by Homer's tenants and customers therefore satisfies the requirements for a prescriptive easement. We affirm the trial court's finding on this point.

Next, Sandy Hills attacks the trial court's finding that Homer's and his predecessors-in-interest's use was adverse. This also presents a question of fact that will be reversed only if the finding is clearly erroneous.

■ The law presumes that use of another's property is adverse if the elements of prescriptive easement are otherwise satisfied. *Crane,* 683 P.2d at 1065 (citing *Lunt v. Kitchens,* 123 Utah 488, 260 P.2d 535, 537 (1953)). However, the owner of the servient estate (Sandy Hills) may overcome that presumption by presenting evidence that the use

was permissive. *Id.; see Richards v. Pines Ranch, Inc.,* 559 P.2d 948, 949 (Utah 1977).

At trial, Homer testified that he used Sandy Hills's property without permission, while the Smiths presented testimony that Homer's use was permissive. The Smiths also testified that the Deweys had permission to cross Sandy Hills's property.[7] This testimony was uncontroverted because the Deweys were no longer alive at the time of trial. In its written findings, however, the trial court stated that the Smiths' testimony concerning the Deweys was "self-serving and not believable in view of [the Smiths'] conduct, demeanor and substantive testimony during trial."

▇▇▇ Sandy Hills claims that the trial court should not have disregarded the Smiths' uncontroverted testimony. Clearly, the fact-finder is in the best position to judge the credibility of witnesses and is free to disbelieve their testimony. *Garrett,* 849 P.2d at 582; *accord Jensen,* 639 P.2d at 152. The trial court did just that here, and we give due regard to the court's opportunity to judge the credibility of the witnesses. *Englert,* 848 P.2d at 168. Moreover, the record reveals that the Smiths' testimony at trial concerning both the Deweys' and Homer's use was contradictory and inconsistent. We therefore uphold the trial court's finding as to the credibility of the Smiths' testimony.

Sandy Hills also claims that it met its burden of showing permissive use by invoking two supposed presumptions of permissiveness. According to Sandy Hills, the presumptions arise because: (1) the Deweys and the Smiths enjoyed a close family relationship; and (2) Sandy Hills "opened a way" for its own use across its property and Homer used it without causing any damage.

▇▇▇ We reject Sandy Hills's arguments on this point. In *Richins v. Struhs,* 412 P.2d 314 (Utah 1966), upon which the trial court

relied in its memorandum decision, the supreme court implicitly rejected the notion that evidence of family ties creates a presumption that would shift the burden back to the owner of the dominant estate. *Id.* at 315. Instead, the court determined that evidence of family ties or a cordial relationship between the predecessors-in-interest can be used in an attempt to overcome the presumption of adverse use. *Id.* at 316. Here, the trial court recognized correctly that family ties can be a factor supporting permissive use, but determined that in this case, the Deweys' and Smiths' family relationship did not translate to a finding that the Deweys' use was permissive.[8] That finding is not clearly erroneous.

In *Buckley v. Cox,* 122 Utah 151, 247 P.2d 277, 279 (1952), the supreme court referred to a presumption of permissiveness created when a person "opens a way" across his or her property and another uses it without causing damage. However, whether "opening a way" is characterized as a presumption or simply a fact that supports permissive use, the trial court's finding of adverse use is really the other side of the permission coin and implicitly rejects Sandy Hills's assertion that it "opened a way" across its property. Because these findings are not clearly erroneous, we sustain them on appeal.

In sum, record evidence does exist to support the trial court's finding that Homer's use of Sandy Hills's property was adverse. Sandy Hills has not met its burden of showing that the trial court's findings are clearly erroneous.[9]

Sandy Hills's remaining claim regarding the prescriptive easement is that the trial court erred in allowing Homer to tack his use to that of the Deweys to establish the required twenty-year prescriptive period. The trial court determined that adverse use of

---

7. The nature of the Deweys' use is important because Homer must show twenty years of adverse use in order to establish a prescriptive easement.

8. We again note that the trial court specifically found that much of the Smiths' testimony concerning their relationship with the Deweys was self-serving and not credible.

9. Sandy Hills also challenges the trial court's determination that even if the Deweys were given permission to cross the Smiths' land, that permission was revoked when the Smiths transferred their property to Smith Investment Company in 1965. Because we affirm the trial court's finding that the Dewey's use was adverse, we need not reach this issue.

Sandy Hills's property was established in approximately 1955, and had existed for thirty years when this dispute arose. Sandy Hills objects to consideration of the Deweys' use of Sandy Hills's property because it claims the Deweys used the property with the Smiths' permission.

This argument depends on a determination that the Deweys had permission to utilize Sandy Hills's property. Because we have already affirmed the trial court's finding that the Deweys' use was adverse, this claim must fail.[10]

Finally, the trial court's determination is supported by sound public policy. As the trial court stated in its findings, the doctrine of prescriptive easement was designed to give legal sanction to property arrangements that have existed peacefully, openly, continuously and without objection for the prescriptive period. In this manner, the court seeks to prevent the very thing that has happened in this case, that is, a dispute after several decades of amicable use. See *Richins*, 412 P.2d at 315–16.

### B. Boundary by Acquiescence

In its counterclaim, Sandy Hills alleged that the Homer building's second floor apartments encroached over the roof of Sandy Hills's abutting building. The trial court found that the apartments did encroach over the roof of Sandy Hills's property. However, it also found that the evidence provided sufficient grounds to establish a boundary by acquiescence, and that therefore Sandy Hills was not entitled to the relief sought.

▮ In order to establish a boundary by acquiescence, a claimant must show: (1) occupation up to a visible line marked by monuments, fences, or buildings; (2) mutual acquiescence in the line as a boundary; (3) for a long period of time; (4) by adjoining landowners. *Van Dyke v. Chappell*, 818 P.2d 1023, 1025 n. 1 (Utah 1991); *Englert*, 848

P.2d at 168 (citing *Staker v. Ainsworth*, 785 P.2d 417, 420 (Utah 1990)). With reference to the second story encroachment, Sandy Hills claims that the first two elements have not been met. According to Sandy Hills, the trial court determined that the abutting walls of the two buildings established the requisite boundary, and failed to include the encroaching apartments as part of the "visible line."

Although the trial court's findings on this issue did not deal separately with the abutting walls and the second story apartment, the court obviously determined that the requisite visible line was created by the abutting walls on the first floor, and the encroaching apartments on the second floor. This determination is supported by uncontroverted evidence that the highly visible apartments had existed in their present form, without alteration, since at least 1964. Indeed, the condition of the apartment wall that encroaches over Sandy Hills's roof has been the subject of disputes between Homer and Sandy Hills for several years.

▮ When a trial court's findings and conclusions on an issue are "less than crystal clear, we may 'search [the record] for grounds upon which they may be upheld.'" *State v. Archuleta*, 850 P.2d 1232, 1240 n. 18 (Utah), *cert. denied*, —— U.S. ——, 114 S.Ct. 476, 126 L.Ed.2d 427 (1993) (quoting *Allen v. Prudential Property & Casualty Ins. Co.*, 839 P.2d 798, 800 (Utah 1992)). Ample record evidence exists to support the conclusion that the second floor encroaching apartments created the "boundary" that had existed with the parties' mutual acquiescence for a long period of time. Based on that evidence, it would be illogical to determine that the trial court meant to find that the boundary was limited to the abutting walls and did not include the apartments. The trial court's finding of boundary by acquiescence is therefore affirmed.[11]

---

10. Sandy Hills also takes issue with the court's alternative ruling that Homer meets the twenty-year prescriptive requirement without relying on the Deweys' use at all. This ruling is based on the trial court's consideration of Homer's lease from the Deweys beginning in 1964. Sandy Hills claims Homer cannot use a lease to establish the prescriptive period. We need not reach this is-

sue because we conclude that Homer can tack his use directly onto that of the Deweys.

11. Even if we determined that the trial court erred in its findings regarding the visible line element of boundary by acquiescence, Homer could still prevail under the balance of injury test. Under that theory, when an encroachment:

## III. DISPUTE WITH THE STEURS

Sandy Hills next challenges the trial court's determination that the Steurs' improvements to the twenty-six foot right-of-way did not violate the terms of the 1953 agreement. The trial court determined that the deeds and the agreement specifically contemplated the improvements made by the Steurs.

Deeds are construed according to ordinary rules of contract construction. *See Hartman v. Potter,* 596 P.2d 653, 656 (Utah 1979). If contract terms are clear and unambiguous, we normally interpret them according to their plain and ordinary meaning without resorting to extrinsic evidence. *Equitable Life & Casualty Ins. Co. v. Ross,* 849 P.2d 1187, 1192 (Utah App.), *cert. denied,* 860 P.2d 943 (Utah 1993). We accord a trial court's interpretation of an unambiguous contract no deference, but review it for correctness. *Id.*

Sandy Hills claims the addition of the sidewalk and the one-foot curb impermissibly altered the usable portion of the right-of-way. At trial, it presented evidence that south bound large semi-trucks would have to cross the center line of 2100 East to approach the right-of-way from that direction due to the addition of the new sidewalk because the walkway is now wider and is raised five inches instead of being partially flush with the pavement.

The agreement states that the Steurs must improve the right-of-way "in such a manner as to provide one lane of traffic westbound and one lane of traffic eastbound over said right-of-way."[12] It also states that the Steurs must provide and maintain a sidewalk "of at least three feet in width along one side [of the right-of-way]." As the trial court correctly determined, the improvements made by the Steurs were in accordance with their obligations under the deed and agreement; they provided a sidewalk of at least three feet in width and improved the right-of-way to provide effective ingress and egress.[13] The deed did not limit the sidewalk size to three feet, and did not specify that the sidewalk had to be flush with the asphalt. The trial court's reading of the agreement is therefore correct.

As to Sandy Hills's assertion that semi-trucks could no longer use the right-of-way, the trial court specifically found that the agreement did not contemplate such use because the parking scheme behind the Homer building would not permit it. This is a factual determination involving the parties' intent and the peculiar facts surrounding the deed. We therefore defer to the trial court's findings.

The trial court found that if a semi-truck did enter the alleyway, it could not maneuver around the corner into the rear right-of-way if vehicles were parked in the spaces that were provided pursuant to the 1953 agreement.[14] This finding is firmly supported by the evidence adduced at trial. We therefore affirm the trial court's determination that the Steurs did not violate the 1953 agreement.

(1) does not cause irreparable injury; (2) was innocently made; (3) would cost an oppressive and disproportionate amount to remove compared to the benefits derived from it; and (4) the servient estate can be compensated with damages, a court may elect not to compel removal. *Papanikolas Bros. Enters. v. Sugarhouse Shopping Ctr. Assocs.,* 535 P.2d 1256, 1259 (Utah 1975).

Here, the record evidence reveals that the only injury caused by the encroachment was water damage to Sandy Hills's building. The court ordered Homer to compensate Sandy Hills for that damage. Moreover, Sandy Hills's expert, who provided the market value of the Sandy Hills building, was aware of the encroachment but did not include it as a negative factor in his valuation of the property. There was no evidence that the encroachment was not innocently made, or that removal would be a viable option.

Therefore, the encroachment would likely remain even if the trial court's findings were in error.

**12.** The agreement makes no mention of the width of the lanes.

**13.** Indeed, the improvements address the very problem of which the Smiths complained; vehicles parking in the right-of-way. The new sidewalk and lane striping make it difficult for vehicles to park there.

**14.** The Steurs presented testimony that no semi-trucks, save one, had actually used the alleyway in the last ten years. That truck was the one that delivered the cement barriers that Sandy Hills placed across its property.

## IV.  CONCLUSION

The trial court did not err in determining that: (1) the evidence supported a finding of prescriptive easement in favor of Homer; (2) the evidence supported a finding of boundary by acquiescence in favor of Homer; and (3) the Steurs' improvements to the right-of-way did not violate the deed or the 1953 agreement.  The trial court's judgment is therefore affirmed.

BILLINGS and GREENWOOD, JJ., concur.