2002 UT App 220

**ALVEY DEVELOPMENT CORP., Plaintiff, Appellee, and Cross-appellant,**

v.

**Van MACKELPRANG and Jamie Mackelprang, et al., Defendants, Appellants, and Cross-appellees.**

No. 20000946–CA.

Court of Appeals of Utah.

June 27, 2002.

Van Mackelprang, Kanab, for Appellants.

Colin R. Winchester, Judicial Conduct Commission, Salt Lake City, for Appellee.

Before BENCH, GREENWOOD and THORNE, JJ.

## OPINION

BENCH, Judge:

¶1 Defendants Van and Jamie Rae Mackelprang (Mackelprangs), appeal the trial court's judgment finding a prescriptive easement in favor of Plaintiff Alvey Development Corporation (Alvey). Alvey cross appeals the trial court's pretrial grant of partial summary judgment, rejecting its claim of an easement by reservation. Both parties also appeal the denial of their respective motions for a new trial. We affirm in part and reverse in part.

## BACKGROUND

¶2 " 'On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard.' " *Johnson v. Higley,* 1999 UT App 278, ¶2, 989 P.2d 61 (quoting *Lake Philgas Serv. v. Valley Bank & Trust Co.,* 845 P.2d 951, 953 n. 1 (Utah Ct.App.1993)).

¶3 In 1986, Garkane Power Association (Garkane) acquired 50 acres of property in Kane County from Afton Jamison. This property is north of, and abuts Mackelprangs' property (Lot 32). The following year, Alvey acquired a portion of the 50 acres from Garkane. Alvey's property from this purchase did not abut Lot 32. In 1997, after Alvey filed this suit, Garkane quitclaimed to Alvey an undivided one-half interest in a portion of the Garkane property that abuts Lot 32. Lot 32 is divided from the Garkane Alvey property by a fence with a gate that has been present since at least 1958. In July of 1998, Garkane disclaimed any interest it had in Lot 32 and was subsequently dismissed from the proceedings below.

¶4 Mackelprangs acquired Lot 32 in a foreclosure sale in 1990 through a trustee's deed. Lot 32 was originally created when Kanab Creek Ranchos, Inc. (KCR) subdivided what we will refer to as the "southern property." In 1977, KCR transferred Lot 32 to its original owners, the Weavers. Follow-

ing the Weavers, several other parties prior to the Mackelprangs owned Lot 32; however, the transfer from KCR to the Weavers is central to the issues in this case. The warranty deed from this transaction stated that transfer to the Weavers was "[s]ubject to a sixty (60) foot wide roadway easement along the West boundary." KCR did not have any ownership interest in the property to the north at the time it transferred Lot 32; nor did KCR ever acquire any ownership interest in that property. This "northern property" (the property now owned collectively by Alvey and Garkane) was, at the time of the 1977 Weaver transfer, owned by the Jamisons. The Jamisons, and successive owners of Lot 32, knew about the clause in the Weavers' warranty deed. However, the Jamisons did not broaden or increase their actual use of the easement as might arguably have been allowed under the reservation clause. Instead, the Jamisons continued to use only the "pre-existing" roadway on the western portion of Lot 32. This roadway had previously been used for agricultural purposes and access to the northern property. Evidence at trial showed that this roadway had been used as early as the 1930s by those who had owned the northern property prior to the Jamisons. In 1996, KCR transferred to Alvey via quitclaim deed, any rights it had in the 60–foot reservation easement mentioned in the 1977 warranty deed.

¶ 5 Alvey filed suit in 1996 to enforce the 60–foot easement across the westerly portion of Lot 32 and to establish an easement by prescription. The trial court ruled in a pretrial summary judgment proceeding that the reservation of the 60–foot easement was invalid, and that the transfer to Alvey was therefore ineffective. Thereafter, following a bench trial, the trial court found that Alvey had a 16.5–foot easement by prescription on the western portion of Lot 32. Mackelprangs appeal the finding of a prescriptive easement and the denial of their motion for a new trial. Alvey cross-appeals the trial court's grant of partial summary judgment as to the 60–foot easement and the denial of its motion for a new trial.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 At issue is the alleged existence of two different easements across Lot 32: a prescriptive easement originating from the use of an access road across Lot 32 dating back to the 1930s, and an easement allegedly created from the reservation clause in the Weavers' warranty deed (reservation easement). In their appeal, Mackelprangs argue that the trial court erred in finding the prescriptive easement across Lot 32 still valid. In its cross appeal, Alvey contends that the trial court erred in granting partial summary judgment, ruling that there was no easement created by the reservation clause. Both parties also dispute the trial court's denial of their respective motions for a new trial.

¶ 7 "[T]he question of whether or not an easement exists is a conclusion of law." *Potter v. Chadaz*, 1999 UT App 95, ¶ 7, 977 P.2d 533. However, the Utah Supreme Court has noted that

> such a finding [of an easement] is "the type of highly fact-dependent question, with numerous potential fact patterns, which accords the trial judge a broad measure of discretion when applying the correct legal standard to the given set of facts. We therefore overturn the finding of an easement only if we find that the trial judge's decision exceeded the broad discretion granted."

*Orton v. Carter*, 970 P.2d 1254, 1256 (Utah 1998) (citation omitted).

¶ 8 Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(c). *See Warburton v. Virginia Beach Fed. Sav. & Loan Ass'n*, 899 P.2d 779, 781 (Utah Ct.App.1995). In reviewing a grant of summary judgment, we view the facts in the light most favorable to the losing party. *See id.*

¶ 9 Finally, rule 59 of the Utah Rules of Civil Procedure provides, in part, that "a new trial may be granted to all or any of the parties and on all or part of the issues...." Utah R. Civ. P. 59(a). When reviewing a trial court's denial of a motion for a new trial, "we will not reverse a trial court's decision

absent [a] clear abuse of ... discretion." *State v. Harmon,* 956 P.2d 262, 266 (Utah 1998).

## I. PRESCRIPTIVE EASEMENT

 ¶ 10 "The requirements for establishing a prescriptive easement are open, notorious, adverse and continuous use of [the] property [of another] for a period of twenty years." *Homer v. Smith,* 866 P.2d 622, 626 (Utah Ct.App.1993). An appurtenant easement is an easement that benefits a particular tract of land, where there is a dominant estate that receives a benefit and a servient estate that inures a burden. *See Johnson,* 1999 UT App 278 at ¶ 13, 989 P.2d 61; *see also* 25 Am.Jur.2d *Easements and Licenses* § 10 (1996).

¶ 11 The trial court found that, based on the evidence, there was access across Lot 32 to the Alvey property since as early as 1939, with evidence showing that the access road was "apparent on the ground" dating back to at least 1958. The trial court also found that such use was open, notorious, adverse, and for the benefit of the northern property. Mackelprangs do not dispute these findings, but contend that Alvey cannot have a prescriptive easement because its property does not abut Lot 32. Mackelprangs point to the 1987 transfer of land from Garkane to Alvey, in which Garkane retained all the property that abuts Lot 32. Mackelprangs argue that when Garkane partitioned the northern property by selling part of it to Alvey, the easement in regard to Alvey's property ceased to exist. They contend that an appurtenant easement cannot benefit a parcel that does not abut the servient tenement (Lot 32) after the division of the dominant tenement (northern property). Mackelprangs point to three cases as support for their argument: *Mawson v. J.G. Inv. Co.,* 23 Utah 2d 437, 464 P.2d 595 (1970), *Farnsworth v. Soter's Inc.,* 24 Utah 2d 199, 468 P.2d 372 (1970), and *Wood v. Ashby,* 122 Utah 580, 253 P.2d 351 (1952).

¶ 12 *Wood* involved an appeal concerning rights of way across a narrow strip of land. *See* 253 P.2d at 352. An ingress-egress easement had been reserved across an identifiable portion of land (strip) that was south of the dominant tenement. *See id.* at 352–53. Eventually, the defendants acquired the dominant tenement and planned to subdivide it. *See id.* The defendants sought to gain additional access across the strip relying upon the original reserved rights of way. *See id.* The Utah Supreme Court stated that

> a right of way appurtenant to an estate is appurtenant to every part of it and inures to the benefit of the owners of every part. "Nevertheless, the partition of the dominant tenement cannot create a further or additional easement across a servient tenement, and an easement of way *does not inure to the benefit of the owner of a parcel which after the division does not abut on the way;* and where the resulting use will increase the burden upon the servient estate, *the right to the easement will be extinguished."*

*Id.* at 354 (citation omitted) (emphasis added).[1] In affirming the decision of the trial court, the Utah Supreme Court held that the defendants were not entitled to additional, separate access across the strip. *See id.* at 355. The supreme court's reasoning in *Wood* follows the rule articulated in *Rollo v. Nelson,* 34 Utah 116, 96 P. 263 (1908):

> [I]t is a well-recognized rule of law that, on a severance of an estate by a sale of a part thereof, all easements of a permanent character, that have been created in favor of the land sold, and which are open and plain to be seen, and are reasonably necessary for its use and convenient enjoyment, unless expressly reserved by the grantees, pass as appurtenances to the land ... [as long as there is not] any additional burden upon the servient estate.

*Id.* 96 P. at 265 (internal citation omitted).

 ¶ 13 Accordingly, a "right of way, which is appurtenant to an estate, is appurte-

---

1. In *Farnsworth v. Soter's Inc.,* the Utah Supreme Court used similar reasoning in concluding that an easement or right of way ceased to exist because the landowners were not abutting owners. *See* 24 Utah 2d 199, 468 P.2d 372, 373 (1970). Similarly, in *Mawson v. J.G. Inv. Co.,* a landowner's right to use an easement across a roadway was held to be invalid for land acquired that was "beyond the ... roadway." 23 Utah 2d 437, 464 P.2d 595, 596 (1970).

nant to every part of it" regardless of how many subdivisions take place. *Id.* Furthermore, an "easement is not extinguished by a division of the estate to which it is appurtenant" and passes as an appurtenance to the land unless the easement is expressly reserved by the grantee. *Id.; see also Aspen Acres Ass'n v. Seven Assocs., Inc.,* 29 Utah 2d 303, 508 P.2d 1179, 1182 (1973). From our reading of the aforementioned cases, at least four basic requirements must be met for an appurtenant prescriptive easement to survive a division of the dominant tenement. First, after the division of the dominant tenement, an additional or further easement cannot be created across the servient tenement. *See Wood,* 253 P.2d at 354. Second, there cannot be any increase in the burden upon the servient tenement after the division. *See Rollo,* 96 P. at 265. Third, the easement must be reasonably necessary for use and convenient enjoyment of the dominant tenement. *See id.* Finally, upon the division of the dominant tenement, the newly created parcel must "abut on the way." *Wood,* 253 P.2d at 354.

¶ 14 The 1987 acquisition of property by Alvey fulfilled the first three of these requirements. However, at the time of the 1987 transfer, Alvey's land did not abut on the way, therefore, Alvey's "right to the easement ... [was] extinguished." *Id.* The remaining question then is this: Did the 1997 conveyance from Garkane to Alvey of a one-half interest in land, which abuts both Lot 32 and Alvey's 1987 parcel, fulfill the requirement found in *Wood* that a newly created parcel must "abut on the way" following a division of the dominant tenement? *Id.* We conclude that it did not.

 ¶ 15 We note at the outset that Utah appears to be in the minority of jurisdictions holding that an easement is extinguished when, after the division of the dominant tenement, a newly created parcel does not abut the servient tenement.[2] *Wood* unequivocally states that "an easement of way does not inure to the benefit of the owner of a parcel which after the division does not abut the way," and consequently, if it does not abut then "the right to the easement will be extinguished." *Id.* The trial court found that Alvey's land from the 1987 purchase did not abut Lot 32. Any rights Alvey could have potentially obtained from Garkane in an easement across Lot 32 were therefore "extinguished."[3]

 ¶ 16 The 1997 quitclaim transfer by Garkane, conveying to Alvey an undivided one-half interest in land that abutted Lot 32, did not revive any rights in the easement for the benefit of Alvey's property. We have found no principle in Utah law that allows for the revival of a prescriptive easement after it has been extinguished. Indeed, in Utah "[t]here is an important interest for property owners to possess unencumbered titles ... [because] public policy [favors] certainty in title to real property, ... to protect bona fide purchasers and to avoid conflicts of ownership, which may engender needless litigation." *Potter,* 1999 UT App at ¶ 13, 977 P.2d 533 (quotations and citations omitted). The only way Alvey could regain a prescriptive

---

2. Termination of an appurtenant easement that does not abut the servient tenement after subdivision of the dominant tenement is not a potential problem in many jurisdictions, because there is no requirement that the divided parcel must abut on the way. *See, e.g., C.B. Alling Realty Co. v. Olderman,* 90 Conn. 241, 96 A. 944, 947 (1916) (concluding that a separation between a parcel and the easement by another lot created during a division of the dominant tenement, did not destroy the easement or deprive the owner from the benefit of the easement); *Akers v. Baril,* 300 Mich. 619, 2 N.W.2d 791, 794 (1942) (stating that "[a] right of way may be appurtenant where the servient tenement is not adjacent to the dominant, according to the rule established in the majority of jurisdictions."); *Crawford Realty Co. v. Ostrow,* 89 R.I. 12, 150 A.2d 5, 9 (1959)
(holding that where the dominant tenement was subdivided, the easement appurtenant to it became subdivided and attached to each part of the subdivided dominant tenement although the subdivision of the dominant tenement separated a parcel from the passageway); *see also,* 10 A.L.R. 960 (1966) (citing *Wood v. Ashby,* 122 Utah 580, 253 P.2d 351 (1952), as contrary authority to the majority position that property need not abut after the division of the dominant tenement).

3. "Extinguish" as defined in Black's Law Dictionary states, in part, "[t]o bring to an end; to put an end to, ... [t]o terminate or cancel." Black's Law Dictionary 604 (7th ed.1999). Similarly, "extinguishment" is defined as "[t]he cessation or cancellation of some right or interest." *Id.*

easement across Lot 32 would be to meet the normal requirements, namely: open, notorious, adverse, and continuous use of the easement for a period of twenty years after its extinguishment. *See Homer,* 866 P.2d at 626. We therefore reverse the trial court as to its finding of a prescriptive easement in favor of Alvey.

## II. RESERVATION EASEMENT

¶ 17 In reviewing a grant of summary judgment, we view the facts in the light most favorable to the losing party. *See Warburton,* 899 P.2d at 781. The trial court ruled, as a matter of law, that the reservation clause did not create "an appurtenant easement, nor did it create an easement in gross, because [the easement] had nothing to attach and could not be utilized in any meaningful way." Therefore, the trial court held that any subsequent transfer of rights in this reservation easement was ineffective. Alvey disputes this finding and argues that the trial court incorrectly ruled that this reservation did not create a valid easement. Alvey contends that the reservation clause in the 1977 warranty deed from KCR to the Weavers created an easement in gross.

¶ 18 Mackelprangs contend that Alvey failed to meet the requirements for an appeal found in rule 4(a) of the Utah Rules of Appellate Procedure. That rule, provides in part, that "[i]n a case in which an appeal is permitted . . ., the notice of appeal . . . shall be filed . . . within 30 days after the date of entry of judgment or order appealed from." Utah R.App. P. 4(a). According to Mackelprangs, this court lacks jurisdiction to hear Alvey's claim because Alvey did not file a notice of appeal within 30 days of the grant of partial summary judgment. We disagree. "[A] partial summary judgment is not generally a final judgment and hence it is not appealable. . . ." *South Shores Concession, Inc. v. State,* 600 P.2d 550, 553 (Utah 1979) (emphasis omitted). A final order or judgment " ' "must dispose of the case as to all the parties, and finally dispose of the subject-matter of the litigation on the merits of the case." ' " *Bradbury v. Valencia,* 2000 UT 50,¶ 9, 5 P.3d 649 (quoting *Kennedy v. New Era Indus.,* 600 P.2d 534, 536 (Utah 1979)

(citation omitted) (emphasis omitted)). The pretrial summary judgment was not a final order or judgment under this standard. Accordingly, we will consider the issue.

¶ 19 The trial court found that KCR did not have any ownership interest in the northern property at the time of the attempted reservation in the warranty deed, nor did it obtain any interest thereafter. Therefore, this attempted reservation was not for the benefit of the northern property, but created a benefit solely for KCR's principals to have a position of leverage against the northern property. "[A]n appurtenant easement, such as one for access [like that found in this case] . . ., 'inheres in the [grantee's] land, concerns the premises, and pertains to its enjoyment. It is incapable of existence separate from the particular land to which it is annexed.' " *Johnson,* 1999 UT App 278 at ¶ 13, 989 P.2d 61 (quoting 25 Am.Jur.2d *Easements and Licenses* § 10 (1996) (citation omitted) (third alteration in original)). We agree with the trial court that the reservation easement had nothing to attach to; therefore, the reservation easement cannot be characterized as an appurtenant easement.

¶ 20 "An easement in gross is not tied to any particular piece of land, and 'grants to the holder the right to enter and make use of the property of another for a particular purpose.' " *Johnson,* 1999 UT App 278 at ¶ 13, 989 P.2d 61 (quoting *Warburton,* 899 P.2d at 781). " 'An easement in gross is of a commercial character when the use authorized by it results primarily in economic benefit rather than personal satisfaction.' " *Crane v. Crane,* 683 P.2d 1062, 1067 (Utah 1984) (quoting *Sandy Island Corp. v. Ragsdale,* 246 S.C. 414, 422, 143 S.E.2d 803, 807 (1965)). Accordingly, an easement in gross for personal use is usually associated with "some personal satisfaction such as aesthetics, a hobby, or personal recreation." *Johnson,* 1999 UT App 278 at ¶ 16, 989 P.2d 61. The trial court found that the reservation easement "could not be utilized in any meaningful way" and therefore was not an easement in gross. We agree. There was no economic benefit created from this reservation clause other than its use as a leverag-

ing tool for the principals of KCR in case they entered into negotiations to acquire the northern property. If KCR had used the reservation easement for some sort of commercial purpose, such as the installation of electric power lines or for the use of a pipeline across Lot 32, then perhaps this easement could be characterized as a commercial easement in gross. However, we find no facts in the record to indicate that KCR was involved in, nor undertook any such commercial activity. *Cf. Crane*, 683 P.2d at 1067 (concluding that the use of an easement to drive a herd of cattle to their summer range was a commercial use because the cattle were raised for profit and not for personal use). Although a commercial easement in gross does not require an ownership interest in adjacent property, *see Johnson*, 1999 UT App 278 at ¶¶ 13–15, 989 P.2d 61, we see nothing in the record to suggest that this was a commercial easement. Furthermore, the principals of KCR did not use the reservation easement to derive any personal satisfaction from aesthetic beauty, a hobby, or personal recreation. *See id.* at ¶ 16, 989 P.2d 61. Therefore, we agree that the reservation clause cannot be construed as an easement in gross and any subsequent transfer passed no rights because the easement was void. Accordingly, we affirm the summary judgment.

### III. DENIAL OF NEW TRIAL

¶ 21 We have considered the issues raised by both parties in regard to their respective arguments for a new trial and find them to be without merit. *See State v. Allen*, 839 P.2d 291, 303 (Utah 1992) (permitting appellate courts to decline to analyze and address in writing every issue raised on appeal).

### CONCLUSION

¶ 22 We, therefore, affirm the trial court's order as to summary judgment concerning the 60–foot reservation easement, and reverse the trial court's finding of a prescriptive easement in favor of Alvey. We remand for additional proceedings consistent with our decision.

¶ 23 WE CONCUR: PAMELA T. GREENWOOD, Judge and WILLIAM A. THORNE JR., Judge.